**Thomas MAYS, Petitioner,**

v.

**UNITED STATES POSTAL SERVICE, Respondent.**

No. 92–3581.

United States Court of Appeals, Federal Circuit.

June 15, 1993.

Michael J. Riselli, Riselli & Pressler, P.C., Washington, DC, argued for petitioner.

Stephen E. Alpern, Sr. Counsel, U.S. Postal Service, Washington, DC, argued for respondent. With him on the brief were Stuart M. Gerson, Asst. Atty. Gen. and R. Andrew German, Chief Counsel, Appellate Div.

Before MAYER, PLAGER, and RADER, Circuit Judges.

MAYER, Circuit Judge.

Thomas Mays appeals the decision of the Merit Systems Protection Board dismissing his appeal from a 21-day suspension from duty and pay for lack of jurisdiction. No. DC0752920432-I-1 (August 18, 1992). We affirm.

## Background

On February 21, 1992, the United States Postal Service, Forestville Post Office, proposed to remove Mays from his position of letter carrier, PS-5, for having a physical altercation with another postal employee and for failure to comply with official instructions. In accordance with his collective bargaining agreement, Mays' union, the National Association of Letter Carriers (NALC), Branch 142, filed a grievance on his behalf over the notice of proposed removal on March 18, 1992. On March 30, the Postal Service issued a decision to remove Mays, effective April 17, 1992.

A.P. Martinez, President of NALC Branch 142, represented Mays in his grievance. Martinez informed Mays that when a grievance reached Step 2 under the negotiated procedure, it could be settled at the union's discretion. On April 21, 1992, the union settled the grievance with a 21-day suspension. The settlement agreement provided in relevant part:

> As a full and final settlement to this matter, the parties mutually agree to the following: The notice of removal dated 2-21-92 and the letter of decision will be reduced to a 21 day suspension. The 14 days served during the emergency [suspension] will count towards the 21 day suspension. The grievant will return to duty on April 27, 1992 at his normal reporting time. If the grievant is involved in a similar incident he will be subject to a removal action.

Mays never signed the agreement, but he returned to work on the agreed upon date. On May 7, 1992, he appealed the 21-day suspension to the board.

## Discussion

Most postal employees do not have the right to appeal adverse personnel actions to the board. Their appeal options are limited to those provided for in the collective bargaining agreement for the bargaining unit of which they are a member. *See* 39 U.S.C. § 1005(a)(1) (1988); *Bacashihua v. Merit Systems Protection Board*, 811 F.2d 1498, 1501 (Fed.Cir.1987) (quoting *Hall v. United States Postal Service*, 26 M.S.P.R. 233, 235 (1985) (citing *Winston v. United States Postal Service*, 585 F.2d 198, 206 (7th Cir.1978))). This appeal process is typically one of negoti-

ated grievance with arbitration. *See* 39 U.S.C. § 1207 (1988). Preference eligible postal employees (preference eligibles) have access to grievance procedures according to a collective bargaining agreement in the same manner as non-preference eligible employees.

In making the Veteran's Preference Act applicable to the Postal Service through the Postal Reorganization Act (PRA) and subsequent amendments, Congress provided preference eligibles an additional right of appeal from adverse personnel actions in accordance with title 5 of the United States Code. 39 U.S.C. § 1005 (1988).* Thus, preference eligibles have the appeal rights of employees in the regular competitive service, access to grievance procedures under a collective bargaining agreement, and the right to appeal to the board. But there is a significant difference between the rights of preference eligibles and those in the competitive service. We acknowledged in *Bacashihua* that preference eligibles are not subject to the same statutory limitation on their appeal rights, found at 5 U.S.C. § 7121 (1988), as are competitive service employees. 811 F.2d at 1501. As a general proposition, 5 U.S.C. § 7121(e)(1) requires a regular federal employee to make an election of appeal procedures. *See Whitaker v. Merit Systems Protection Board,* 784 F.2d 1109, 1110 (Fed.Cir. 1986). One must choose either the grievance procedures, or an appeal to the board, but once that election is made, the decision is binding and the avenue not chosen is then precluded. *Morales v. Merit Systems Pro-*

*tection Board,* 823 F.2d 536, 538 (Fed.Cir. 1987). Per *Bacashihua,* on the other hand, section 7121 is not applicable to the Postal Service, and so preference eligibles are not required to make an election of appeal procedures; they may pursue both. 811 F.2d at 1502.

This opportunity to simultaneously pursue two avenues of appeal based on the same adverse action gives rise to the issue before us now. Where a preference eligible grieves an adverse action and ultimately settles that grievance, the question is what effect that settlement has on any subsequent right of appeal to the board.

The board based its dismissal of Mays' appeal on its *Castro v. United States Postal Service,* 51 M.S.P.R. 530 (1991), which held that an employee's settlement of a grievance is normally considered a voluntary action over which the board has no jurisdiction. In that case, the employee settled a grievance by an agreement which contained the following language: "The above [agreement] constitutes a full and complete settlement of the subject case and resolves any and all other issues pertaining thereto." *Id.* at 533. Pursuant to the settlement the Postal Service cancelled a removal action against Castro and substituted a suspension. Although the agreement was silent about Castro's right to appeal the suspension, the board determined that the union negotiated the settlement to get Castro back to work as soon as possible and Castro failed to establish that his acceptance of the agreement (presumably by re-

---

* As initially enacted the PRA simply stated:

> (2) The provisions of title 5 relating to a preference eligible (as that term is defined under section 2108(3) of such title) shall apply to an applicant for appointment and any officer or employee of the Postal Service in the same manner and under the same conditions as if the applicant, officer, or employee were subject to the competitive service under such title. The provisions of this paragraph shall not be modified by any program developed under section 1004 of this title or any collective-bargaining agreement entered into under chapter 12 of this title.

Pub.L. No. 91–375, 84 Stat. 731 (1970) (codified at 39 U.S.C. § 1005(a)(2) (1988)). In 1987, this section was amended:

> [T]o extend to certain officers and employees of the United States Postal Service the same

procedural and appeal rights with respect to certain adverse personnel actions as are afforded under title 5, United States Code, to Federal employees in the competitive service. Postal Service Employees Appeal Rights, Pub.L. No. 100–90, 1987 U.S.C.C.A.N. (101 Stat.) 673 (preamble). The amendment added the following:

> (4)(A) Subchapter II of chapter 75 of title 5 shall apply—
> (i) to any preference eligible in the Postal Service who is an employee within the meaning of section 7511(a)(1)(B) of such title; and
> (ii) to any other individual who—
> (I) is in the position of a supervisor or management employee ...

39 U.S.C. § 1005(a)(4)(A)(i) (1988).

turning to work) was not voluntary. Because he voluntarily accepted the suspension there was no further "action" over which the board had jurisdiction. We subscribe to this analysis and adopt it.

In our case the board saw Mays' position as indistinguishable from Castro's. It held that the language of the settlement agreement was substantially the same as that in *Castro* and although Mays was not a signatory to the agreement, he was bound by his union's actions in settling the removal action. The board rejected Mays' argument that acceptance of the settlement was not voluntary because the union reached a settlement without consulting him, he did not agree to the suspension, and he was misinformed by his representative. It concluded that Mays did not make any showing that he was coerced, deceived or misinformed by the Postal Service and therefore did not prove that his settlement was not voluntary.

The settlement agreement is a contract, of course, and its interpretation is a matter of law. *Greco v. Department of the Army*, 852 F.2d 558, 560 (Fed.Cir.1988). The language of the settlement is unambiguous and provides for a broad waiver of Mays' right to continue to contest the Postal Service's adverse action. The phrase "full and final settlement *to this matter*" is undeniably directed to the underlying removal action. It is not limited, as Mays argues, solely to the grievance procedure. In settling "this matter" by accepting a 21–day suspension in lieu of removal, Mays waived all further rights to appeal the settlement to the board.

Mays rejoins with an affidavit of his union representative, Martinez, that says Mays was advised that acceptance of the settlement would not affect his right to appeal to the board. The affidavit also asserts that the Service was aware of Mays' alleged appeal right because its representative discussed settling the grievance for a 14–day suspension, which the Postal Service specifically acknowledged would not give rise to any right of appeal to the board. *See* 5 U.S.C. § 7512 (1988). From this evidence Mays argues that neither party intended the settlement to deprive him of his right to appeal to the board. But the language of the agreement does not support the conclusion that the Postal Service intended to preserve Mays' right to appeal to the board. *See Greco*, 852 F.2d at 560. It defies logic that it would have chosen to settle the grievance at all, let alone for a short suspension, if it anticipated the dispute would continue in the form of a board appeal. Indeed, Mays' own actions, viewed objectively, contradict his alleged subjective intent to preserve his right of appeal. By returning to work, he ratified the settlement negotiated by his union representatives and established his assent to the unambiguous agreement by accepting the fruits of the settlement.

Mays further argues that the settlement agreement is silent about board appeal rights and that, in the absence of an express waiver, his right to appeal the suspension to the board is reserved. He parrots the dissenting opinion in *Castro* which argued for a rule requiring a preference eligible to expressly waive his right to board appeal in the event of a grievance settlement. The dissent cited a number of cases in which an employee had challenged "a single action by instituting two proceedings," these cases purportedly standing for the rule that "the resolution of one of those proceedings does not necessarily resolve the other" and there must be "an intentional relinquishment" of the right to pursue an appeal before the board. 51 M.S.P.R. at 536.

The argument falters because it overlooks the differences between the rights of a preference eligible and the rights of the employees in the cited cases. Most of the cases cited involved employees who brought a claim of discrimination under Title VII, 42 U.S.C. § 2000e–2 (1988), as well as a separate claim under another statutory or contractual authority. 51 M.S.P.R. at 536 (citing *Judie v. Hamilton*, 872 F.2d 919, 923 (9th Cir.1989) (Title VII and right to contract under 42 U.S.C. § 1981); *Perez v. Maine*, 760 F.2d 11, 12 (1st Cir.1985) (Title VII and discrimination under state antidiscrimination laws); *Kawatra v. Medgar Evers College of City University*, 700 F.Supp. 648, 651 (E.D.N.Y.1988) (Title VII action after settling grievance under faculty bargaining agreement); *Scherer v. Davis*, 543 F.Supp. 4,

11 (N.D.Fla.1981) (employee settled state employment claim and subsequently brought action under 42 U.S.C. § 1983); and *Okonko v. Union Oil Company*, 519 F.Supp. 372 (C.D.Cal.1981) (Title VII and breach of employment contract)). In those situations, the avenues for redress of the claims were separate and distinct from one another. The claims based on different laws giving rise to separate substantive rights were not mutually foreclosed by settlement of one of them, notwithstanding their common factual bases.

The dispositive difference here is that preference eligibles do not have two separate substantive rights. The grievance procedure and appeal to the board are simply two procedural avenues available to them to vindicate the same underlying cause of action. Both the grievance procedure and right to appeal facilitate challenges of the adverse actions set out in 5 U.S.C. § 7512. Although the Veteran's Preference Act and the PRA establish the right to board appeal, they expressly say that the "provisions of title 5 . . . shall apply" to preference eligibles in the Postal Service. 39 U.S.C. § 1005(a)(2). The amendments make it even clearer that this right of appeal is a procedural right and not a new cause of action. *See* Postal Service Employee Appeal Rights, Pub.L. No. 100–90, 1987 U.S.C.C.A.N. (101 Stat.) 673 (preamble) and the accompanying legislative commentary; 133 Cong.Rec. 4489–4492 (March 3, 1987); 133 Cong.Rec. 21237–21240, 21242–21244 (July 28, 1987); 133 Cong.Rec. 22117–22118 (August 3, 1987) (containing numerous references to the rights of a preference eligible as "procedural" or "appeal procedures"). The burden is on the employee to expressly reserve the additional procedure if he chooses to settle a grievance. Mays did not.

### Conclusion

Accordingly, the decision of the Merit Systems Protection Board dismissing the appeal for lack of jurisdiction is affirmed.

*AFFIRMED.*