NOTE: This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

2009-3249

JAMES E. SWINK, JR.,

Petitioner,

v.

MERIT SYSTEMS PROTECTION BOARD,

Respondent.

James E. Swink, Jr., of Kansas City, Missouri, pro se.

Michael A. Carney, Attorney, Office of the General Counsel, Merit Systems Protection Board, of Washington, DC, for respondent. With him on the brief were James M. Eisenmann, General Counsel, and Keisha Dawn Bell, Deputy General Counsel.

Appealed from: Merit Systems Protection Board

NOTE:  This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

2009-3249

JAMES E. SWINK, JR.,

Petitioner,

v.

MERIT SYSTEMS PROTECTION BOARD,

Respondent.

Petition for review of the Merit Systems Protection Board
in CH752S090328-I-1.

_____

DECIDED:  April 12, 2010

_____

Before BRYSON, SCHALL, and DYK, Circuit Judges.

PER CURIAM.

## DECISION

Appellant James E. Swink, Jr., challenges the decision of the Merit Systems Protection Board dismissing his appeal for lack of jurisdiction.  We affirm.

## BACKGROUND

Mr. Swink is a preference-eligible City Carrier for the United States Postal Service in Kansas City, Missouri.  On December 5, 2007, the Postal Service notified him that he was being placed on emergency off-duty status without pay effective December

4, 2007, as a result of an incident in which he allegedly ran toward a supervisor in a threatening manner. On December 27, 2007, the Postal Service issued a notice of proposed removal based on that conduct. Mr. Swink filed a grievance and, on January 15, 2008, the Postal Service and Mr. Swink's union entered into a settlement agreement. The agreement provided that the proposed penalty of removal would be reduced to a letter of warning, that Mr. Swink would report to his normal assignment on his next scheduled workday, and that there would be "no recourse to back-pay." As agreed, Mr. Swink reported for duty on his next scheduled workday.

Mr. Swink subsequently filed another grievance on January 9, 2009, seeking two weeks of back pay relating to the December 2007 off-duty placement and making allegations of age and race discrimination. That grievance was settled between the Postal Service and Mr. Swink's union in a January 23, 2009, agreement, which included a provision stating that the "Union will withdraw the part about the 2-week back pay for the incident back in 2007."

On February 2, 2009, Mr. Swink filed an appeal with the Board, alleging that the Postal Service had discriminated against him, had created a hostile work environment, and had taken various unwarranted personnel actions against him. His appeal referred to the December 2007 notice of proposed removal and identified the 2009 settlement agreement as the action from which his appeal was taken. Among other requested forms of relief, Mr. Swink sought back pay for the period that he was on off-duty status without pay during December 2007.

The administrative judge issued an acknowledgement order directing Mr. Swink to present evidence showing that the Board had jurisdiction over the appeal. The

administrative judge subsequently ordered Mr. Swink to show that the appeal was timely filed or that good cause existed for the delay of more than 400 days since the alleged agency actions. The Postal Service argued that the appeal was untimely, that the Board lacked jurisdiction because the December 2007 off-duty placement did not exceed 14 days, and that the January 2008 settlement agreement provided for "no recourse to back-pay" and did not reserve Mr. Swink's right to appeal to the Board.

The administrative judge dismissed Mr. Swink's appeal for lack of jurisdiction on the ground that Mr. Swink had not been suspended for a period of more than 14 days. See 5 U.S.C § 7512(2). Specifically, the administrative judge found that, although Postal Service records showed that Mr. Swink had been on leave without pay (LWOP) for 84.48 hours in December 2007, that total consisted of two separate consecutive periods of LWOP, neither of which exceeded 14 days. The administrative judge further found that the Board lacked jurisdiction to address Mr. Swink's discrimination claims in the absence of an otherwise appealable matter. The administrative judge did not address the issue of timeliness.

Mr. Swink filed a petition for review to the full Board, in which he argued that the time records produced by the agency were inaccurate and that the administrative judge had erred in concluding that his December 2007 suspension did not exceed 14 days. The Board denied the petition but reopened the appeal and issued a modified decision, in which it affirmed the original dismissal for lack of jurisdiction but on different grounds.

In finding that it lacked jurisdiction over the appeal, the Board did not rely on the administrative judge's ruling that Mr. Swink's suspension did not exceed 14 days. Instead, the Board concluded that it lacked jurisdiction as a result of the 2008 settlement

agreement. The Board noted that the agreement did not expressly reserve Mr. Swink's right to seek Board review and that Mr. Swink had not alleged that he had entered into the settlement agreement involuntarily. The Board further observed that Mr. Swink had not alleged that he was unaware of the union's activity on his behalf, that he did not designate the union to act as his representative, that he did not ratify the union's activities by reporting to his normal bid assignment on his next scheduled work day, or that the union was representing its own interests and not his. Based on the voluntary settlement agreement that did not reserve a right of appeal to the Board, the full Board held that it lacked jurisdiction over Mr. Swink's appeal.

DISCUSSION

1. Preference-eligible Postal Service employees are entitled to pursue both a Board appeal and a union-negotiated grievance proceeding regarding the same adverse action. Mays v. U.S. Postal Serv., 995 F.2d 1056, 1058 (Fed. Cir. 1993). When an employee settles a grievance, however, that course of action is presumed to be voluntary and may divest the Board of jurisdiction over the underlying matter. See id. at 1058-59; Perry v. U.S. Postal Serv., 78 M.S.P.R. 272, 276 (1997); Castro v. U.S. Postal Serv., 51 M.S.P.R. 530, 531-34 (1991). In particular, when the terms of a settlement agreement prohibit an appeal to the Board or provide for a full and final settlement of all underlying matters, the Board is deprived of jurisdiction. See Mays, 995 F.2d at 1059-60; Laity v. Dep't of Veterans Affairs, 61 M.S.P.R. 256, 261-63 (1994). Moreover, even when a settlement agreement does not explicitly abandon the right to a Board appeal, the Board lacks jurisdiction unless the settlement agreement explicitly reserves the employee's right to seek the Board review. Mays, 995 F.2d at 1060 ("The burden is on

the employee to expressly reserve the [right of appeal] if he chooses to settle a grievance."); see also Perry, 78 M.S.P.R. at 276 ("Even though the settlement agreement does not bar a Board appeal, the appellant nonetheless must have expressly reserved the right to seek Board review in order for us to retain jurisdiction.").

Mr. Swink's 2008 settlement agreement does not contain an express reservation of appeal rights. Mr. Swink argues that he did not knowingly waive his right to a Board appeal, because the agency failed to inform him that he had such a right. That argument is unavailing. Under the rationale of Mays, the burden is on the employee to reserve the right of appeal, and it is immaterial whether the appellant knew of, and intentionally did not reserve, a Board appeal right when he entered into the settlement agreement. See Perry, 78 M.S.P.R. at 278.

Even when a settlement agreement does reserve an appeal right, an employee may still establish Board jurisdiction if he can show that his acceptance of the agreement was involuntary. See Perry, 78 M.S.P.R. at 278. However, the employee bears a "heavy burden" to show the involuntariness of a settlement. Asberry v. U.S. Postal Serv., 692 F.2d 1378, 1380 (Fed. Cir. 1982). "One who attacks a settlement must . . . show[] that the contract he has made is tainted with invalidity, either by fraud . . . or by a mutual mistake." Id. A grievance settlement is presumed to be voluntary, particularly when the employee ratifies the agreement by accepting the terms negotiated by the union. See Mays, 995 F.2d at 1058-59.

Mr. Swink argues that he did not become aware of the January 15, 2008, settlement agreement until February 7, 2008. However, he fails to explain why that 23-day delay rendered the settlement involuntary. Nor has he made any showing that he

was coerced, defrauded, or misinformed by the agency, or that the settlement agreement was invalid due to mutual mistake. Although the 2008 settlement agreement was signed by a union representative, rather than by Mr. Swink, that fact is insufficient to establish involuntariness. See Mays, 995 F.2d at 1059. As in Mays, Mr. Swink ratified the negotiated settlement by returning to work and accepting the fruits of the settlement, including the lesser penalty of a letter of warning in lieu of removal. It is undisputed that Mr. Swink initiated the grievance proceeding, and he does not allege that he did not designate the union as his representative or that the union represented its own interests as opposed to his. Therefore, Mr. Swink has failed to show that he entered into the 2008 settlement involuntarily.

Mr. Swink also argues that the language of the 2008 settlement agreement was ambiguous. Although he concedes that "[t]he wording 'there is no recourse to backpay' appears plain on its face," he asserts that the sentence in question could be interpreted as meaning either: (1) that the agency stated that Mr. Swink has no legal recourse to back pay; or (2) that the grievant (Mr. Swink) acknowledged that he has already "received all of the relief to which he is entitled[.]" Even assuming that language was ambiguous, the later 2009 agreement made clear that the backpay claim for 2007 would be "withdraw[n]." Mr. Swink thus disavowed entitlement to back pay for the December 2007 period of suspension. For that reason as well, the Board properly concluded that it lacked jurisdiction over Mr. Swink's appeal.

2. Mr. Swink also contends that the 2009 settlement agreement cured any jurisdictional defect in the 2008 settlement agreement and reinstated his right to a Board appeal on the issue of back pay. However, Mr. Swink points to no authority suggesting

that an employee who has waived Board jurisdiction through a grievance settlement can restore his Board appeal rights by filing another grievance on the same matter. Even if such an avenue were available, nothing in the 2009 settlement agreement purports to create Board appeal rights, as the 2009 agreement, like the 2008 agreement, does not expressly reserve Mr. Swink's right to an appeal before the Board. Moreover, the 2009 settlement agreement states that the "Union will withdraw the part about the 2-week back pay for the incident back in 2007." Therefore the 2009 settlement agreement on its face disclaims Mr. Swink's right to seek back pay for the December 2007 suspension. The 2009 settlement agreement, like the 2008 agreement, provides no basis for jurisdiction over Mr. Swink's appeal.

3. Finally, Mr. Swink reasserts his argument that, contrary to the administrative judge's findings, the December 2007 suspension actually exceeded 14 days and that the Board possessed jurisdiction for that reason. While a showing that a suspension exceeded 14 days is necessary to invoke the Board's jurisdiction, such a showing is not sufficient when other prerequisites for jurisdiction are absent. Here, the Board dismissed Mr. Swink's petition based on an independent reason for lack of jurisdiction, namely, Mr. Swink's failure to reserve his Board appeal rights in the 2008 settlement agreement. Because we affirm the Board's dismissal on that basis, the question of the actual length of Mr. Swink's suspension is irrelevant.