**LOCKHEED MARTIN IR IMAGING SYSTEMS, INC., Appellant,**

v.

**Togo D. WEST, Jr., Secretary of the Army, Appellee.**

No. 96–1087.

United States Court of Appeals, Federal Circuit.

March 4, 1997.

Leonard Paris, Lexington, MA, argued, for appellant. On the brief was Alvin A. Simon, Yonkers, NY.

John K. Lapiana, Attorney, Commercial Litigation Branch, Civil Division, Department of Justice, Washington, D.C., argued, for appellee. With him on the brief were Frank W. Hunger, Assistant Attorney General, David M. Cohen, Director, and Kirk T. Manhardt, Assistant Director.

Before RICH, NEWMAN, and MAYER, Circuit Judges.

PAULINE NEWMAN, Circuit Judge.

Lockheed Martin IR Imaging Systems, Inc. appeals from the final decision of the Armed Services Board of Contract Appeals, *Loral Infrared & Imaging Systems, Inc. v. West*, ASBCA No. 45744, 95–2 BCA ¶ 27,803, holding that Loral[1] is not entitled to recover certain increased costs incurred in its contract to provide certain products to the

1. During this appeal Lockheed Martin IR Imaging Systems succeeded Loral Infrared & Imaging

Army. We conclude that the Army constructively changed the contract by departing from its option terms, and that Loral is entitled to an appropriate adjustment. The Board's decision as to liability is reversed; we remand for determination of quantum.

## THE SEALED BID OPTION PROVISION

The United States Army Communications–Electronics Command (CECOM) issued fixed-price sealed bid Solicitation No. DAAB07–91–B–M152. In sealed bid procurements the government solicits bids by issuing an Invitation For Bids (IFB). The IFB is not an offer by the government to purchase goods or services: the prospective contractor's bid is the offer, and the government's award of the contract is the acceptance. J. Cibinic & R. Nash, *Formation of Government Contracts* 153 (2d ed.1986). In sealed bid procurements, acceptance by the government is made without negotiation or material variation from the terms of the contractor's offer. 10 U.S.C. § 2305(b)(3); Federal Acquisition Regulation 14.101(e); *CRF v. United States*, 224 Ct.Cl. 312, 624 F.2d 1054, 1060 (1980).

The solicitation was for the fabrication and delivery of 779 Detector Cooler Assemblies and 779 accompanying Warranty of Supplies, and an option provision whose meaning is the subject of this dispute. Contract Line Item No. (CLIN) 0001 of the solicitation included the following statement concerning the option:

A 100% OPTION TO INCREASE QUANTITY PROVISIONS IS INCLUDED. SEE CLIN 0018.

CLIN 0018, in Section B of the solicitation, repeated this aspect of CLIN 0001 as follows:

THIS IS A 100% OPTION FOR CLIN 0001 FOR A QUANTITY OF 779 EACH. SEE SECTION H, 'OPTION REQUIREMENTS' AND SECTION M, 'EVALUATION OF OPTIONS.'

Sub Line Item No. (SLIN) 0018AA stated the "Deliveries or Performance" of the option quantity, as follows:

Systems; for consistency the appellant will continue to be designated as Loral.

| DEL REL CD | QUANTITY | DEL DATE |
|---|---|---|
| 001 | 779 | Undefinitized |

The Board found that the solicitation required the bidder to submit a price for the entire option quantity, that is, for "the option included in the solicitation." The Board found that although not required to do so, the bidder was permitted to offer various prices for varying option quantities. Paragraph M–2, entitled "EVALUATION OF OPTIONS," states:

M–2. If varying option prices are offered depending on the quantities actually ordered and/or the dates when ordered, only the price offered for the maximum option quantity, to be ordered on the last day on which the option may be exercised, will be considered in the evaluation for award. Regardless of the price considered in the evaluation for award, however, the Government may exercise the option for quantities less than the maximum and prior to the last day for exercise, at the option price offered for that particular quantity and order date.

Section H–4 of the solicitation, by provision entitled "OPTION FOR INCREASED QUANTITY–SEPARATELY PRICED LINE ITEM," states:

H–4a. The Government may require delivery of the option numbered CLIN/SLIN identified in Section B in the quantity and at the unit price specified in Section B. The contracting officer may exercise this option at any time and from time to time, from date of award until 120 DAYS PRIOR TO LAST SCHEDULED PRODUCTION DELIVERY, by giving written notice to the contractor.

In its response to the solicitation, Loral offered the "100% option" for 779 Assemblies at a unit price of $9,415, and the accompanying warranty for 779 Assemblies at a unit price of $389. These were the same prices as for the principal contract quantity of 779. Loral did not offer lesser quantities or varying option prices depending on quantities or order dates. Loral's offer was for the 100% option set forth in CLIN 0018: "This is a 100% option for CLIN 0001 for a quantity of 779 each."

The Army accepted Loral's sealed bid, and sent Loral the signed contract containing the terms as bid. However, the Army also sent Loral a document entitled "Supplemental Information, AWARD/CONTRACT ADDENDUM," which stated:

1. SECTION B, STANDARD FORM 36, ATTACHED TO THIS ADDENDUM, IS DEFINITIZED TO REFLECT:

A. THE ITEM PRICE AND QUANTITIES BEING PROCURED.

B. THE ACCEPTABLE DELIVERY SCHEDULE DATES FOR THE ITEMS PURCHASED.

C. THE ACCOUNTING CLASSIFICATION AND THE AMOUNT OF FUNDS OBLIGATED BY THE GOVERNMENT TO PROCURE THE ITEMS SET FORTH IN THIS ADDENDUM.

2. OPTION FOR INCREASED QUANTITY UP TO 779 EACH SHALL BE AT A UNIT PRICE OF $9,415.00 EACH.

The Army states that this Addendum "clarified" that the contract was not for the 100% option, but was for "up to" the 100% option quantity at the unit price in Loral's bid. Loral states that the contract award, by statute and regulation, was complete in accordance with its terms. Loral states that it was impermissible for the Army, unilaterally, to change the terms of the sealed bid solicitation after the contract had been bid and awarded, and that the Addendum is of no contractual significance.

The Army duly sought less than 100% option quantities. The contracting officer issued unilateral contract modification P00001, titled "partial exercise" of the option, for a total of 131 assemblies at the unit price of $9,415, which was the 100% option price. Loral protested this exercise of less than the 100% option. The Army insisted, and Loral complied while reserving its right to recompense, asserting constructive change. Two months later the Army issued unilateral modification P00002 for 4 additional assemblies, again at the 100% option unit price. Loral again complied under protest. No other quantities were ordered.

Loral submitted a claim for additional compensation. The contracting officer, denying the claim, stated the Army's position that the contract was not for a 100% option and that any quantity, at the Army's choice, could have been ordered at the same unit price Loral had offered for the 100% option. The Army relies on Section M–2 of the solicitation, quoted *supra*, as notifying Loral that this was not a 100% option contract. The Army states that Loral was required by Section M–2 to offer varying option prices to accommodate any quantity up to 779, and that since Loral did not do so, it meant that Loral's option price was the same for any quantity the Army might decide to order and any order date.

The Loral position is that Section M–2 did not require it to offer lesser quantities than the 100% option, and that it did not do so. Loral points out that Section M–2 is consistent with CLIN 0001, CLIN 0018, and SLIN 0018AA, all of which state only the 100% option term. Loral states that Section M–2 simply permitted, but did not require, the offer of lesser option quantities and the setting of prices depending on quantities and order dates.

The Armed Service Board of Contract Appeals interpreted the contract in accordance with the government's position, and denied any adjustment to Loral.

## DISCUSSION

In accordance with the Contract Disputes Act, 41 U.S.C. §§ 601–613, the interpretation of a contract is reviewed as a matter of law, with no deference owing to the interpretation adopted by either the agency or the Board. 41 U.S.C. § 609(b); *R.B. Wright Construction Co. v. United States,* 919 F.2d 1569, 1571 (Fed.Cir.1990); *Beta Systems, Inc. v. United States,* 838 F.2d 1179, 1183 (Fed.Cir.1988).

■ General rules of contract interpretation apply to contracts to which the government is a party. Thus the various contract provisions must be read as part of an organic whole, according reasonable meaning to all of the contract terms. *Gould, Inc. v. United States,* 935 F.2d 1271, 1274 (Fed.Cir.1991); *Unicon Management Corp. v. United States,*

179 Ct.Cl. 534, 375 F.2d 804, 806 (1967). Such interpretation must assure that no contract provision is made inconsistent, superfluous, or redundant. *McAbee Construction, Inc. v. United States,* 97 F.3d 1431, 1435 (Fed.Cir.1996); *Hughes Communications Galaxy, Inc. v. United States,* 998 F.2d 953, 958 (Fed.Cir.1993). The words of a contract are deemed to have their ordinary meaning appropriate to the subject matter, unless a special or unusual meaning of a particular term or usage was intended, and was so understood by the parties. *Foley Co. v. United States,* 11 F.3d 1032, 1034 (Fed.Cir. 1993); *Alaska Lumber & Pulp Co. v. Madigan,* 2 F.3d 389, 392 (Fed.Cir.1993).

■ Concerning the option provision, the Army asserts that the solicitation was patently ambiguous, and that this facial flaw gave rise to a duty to seek clarification. *See Fortec Constructors v. United States,* 760 F.2d 1288, 1291 (Fed.Cir.1985) (the existence of a patent ambiguity raises the duty of inquiry). The Army states that since Loral did not inquire, Loral must be held to the Army's interpretation of the option provision.

■ A contract provision is deemed to be patently ambiguous if it is susceptible of two different yet reasonable interpretations, each of which is consistent with the contract language and with the other provisions of the contract, and if the ambiguity would be apparent to a reasonable person in the claimant's position. *See Community Heating & Plumbing Co. v. Kelso,* 987 F.2d 1575, 1579 (Fed.Cir.1993). If a patent ambiguity exists, the rules of government contracting place the obligation of inquiry upon the contractor. *Fortec Constructors,* 760 F.2d at 1291; *Newsom v. United States,* 230 Ct.Cl. 301, 676 F.2d 647, 649–50 (1982). However, if there is no facial ambiguity, the criterion is whether the contractor reasonably interpreted the contract, applying the usual rule of *contra preferentem* against the contract drafter:

[I]f some substantive provision of a government-drawn agreement is fairly susceptible of a certain construction and the contractor actually and reasonably so construes it, in the course of bidding or performance, that is the interpretation which will be adopted.... If the [government]

chafes under the continued application of this check, it can obtain a looser rein by a more meticulous writing of its contracts....

*WPC Enterprises, Inc. v. United States,* 163 Ct.Cl. 1, 323 F.2d 874, 877–78 (1963).

Loral states that it did not offer and was not required by the contract to offer lesser option quantities, and that the "100% option" term was clearly stated and unambiguous. We agree that Loral's reading was reasonable. CLIN 0001 mentions only a 100% option, CLIN 0018 states that "this is a 100% option," and Loral's bid was for a 100% option. Section M–2 did not contradict the line items, and Loral plainly did not offer lesser quantities. It is not reasonable to read the solicitation and Loral's response as forming a contract in which Loral would be bound to provide any option quantity the Army might choose, and on the same terms as were bid for the 100% option.

 In retrospect, the Addendum suggests that the Army recognized this problem with its solicitation. However, the Addendum was not the way to correct a flawed solicitation. *See CRF v. United States,* 624 F.2d at 1060. A material change in the terms of the sealed bid solicitation, after the bid is complete and the contract awarded, can not be imposed upon the bidder with impunity. In addition, the regulations governing sealed bid solicitations require that no award be made unless the bid is responsive to the solicitation terms, requiring the government to ascertain any inadequate response before, not after, the award. The award is based on the bidder's response to the solicitation, to which the bid must conform. FAR § 14.103–2 states:

No awards shall be made as a result of sealed bidding unless—

* * * * * *

(d) ... [the] bid is responsive to the terms of the invitation for bids....

*See also, Honeywell, Inc. v. United States,* 870 F.2d 644, 648 (Fed.Cir.1989) (responsiveness is determined by reference to bids when they are opened). FAR § 14.408–1(c)(5) defines the award as consisting of the response to the invitation for bids and "any acceptable additions or changes made by a bidder in the bid" which are "clearly and accurately set forth ... in the award document." The regulations permit no additions or changes to the invitation for bids by the government after the bid is opened. *See* FAR § 14.101(d); FAR § 14.208.

The solicitation included a line item for a 100% option. Loral bid a 100% option. Section H–4a, *see supra,* provided that the government could "require" delivery of the option "identified in Section B," which was the 100% option, while section M–2 stated that a bidder "may" offer additional option prices for varying option quantities and order dates. Loral reasonably read the solicitation as not requiring it to offer other than a 100% option, and did not do so. When the Army awarded the contract to Loral, Loral's bid terms were accepted.

The award document, which incorporated the solicitation into the contract, showed on its face (by a check in Box 18 entitled "AWARD") that no changes were made and therefore that the "Contractor is not required to sign this document." The Addendum was not presented for Loral's signature. Whatever the reason for the Addendum, it could not change the conditions of the award in a way that materially benefitted one side and materially prejudiced the other.

 Loral argues that the Army recognized that it was not exercising the option according to its terms when it described its actions as a "partial exercise." Loral points out that an option, like any contract, is circumscribed by its terms. *See Corbin on Contracts,* § 284 (1963) (an option must be exercised "in exact accord with the terms of the option."); *New England Tank Industries of New Hampshire, Inc. v. United States,* 861 F.2d 685, 687 (Fed.Cir.1988) ("It is well settled that to properly exercise that option, the government's acceptance of the offer had to be unconditional and in exact accord with the terms of the contract being renewed.") Loral asserts that the Army's "partial exercise" is not permitted by contract law, by the contract provisions, by the FAR, or by the solicitation. We agree that the partial exercises

were improper, for the contract was for a 100% option.

The Board erred in its interpretation of the contract, for Loral was not committed to provide less than the 100% option at the same unit price as for the 100% option. The Army's requirement that the lesser amounts be provided was a constructive change for which appropriate adjustment is warranted.

Loral shall recover its increased costs in supplying the items under the conditions in which they were ordered, and profit thereon as appropriate.

### Costs

Costs to Loral.

*REVERSED AND REMANDED.*