**OLYMPIA PROPERTIES, L.L.C., Plaintiff,**

v.

**UNITED STATES, Defendant.**

No. 00–734C.

United States Court of Federal Claims.

Oct. 10, 2002.

Robert T. Brousseau, Stutzman & Bromberg, P.C., Dallas, TX, attorney of record for the plaintiff.

Timothy P. McILmail, Commercial Litigation Branch; David M. Cohen, Director, Commercial Litigation Branch, Civil Division, United States Department of Justice, for the defendant. Lynn W. Flanagan, United States Department of Agriculture, of counsel.

## OPINION

HORN, Judge.

### FINDINGS OF FACT

This case arises from a commercial lease between the Agriculture Stabilization and Conservation Service (ASCS), of the United States Department of Agriculture (USDA), and Kroh Operating Limited Partnership (Kroh), for office space located in Kansas City, Missouri. The ASCS issued a solicitation for the lease of office space in Kansas City, Missouri. The solicitation specified that the ASCS required a lease for "a total of 100,000 to 105,000 net usable square feet of first class, high quality office, conference/training, and special use space ... within one (1) mile of ... the Federal Building, 8930 Ward Parkway, Kansas City, Missouri." The facility was to house the Kansas City Commodity Office (KCCO), the Kansas City Management Office (KCMO), and the KCMO mail room. The solicitation required a lease term of five years, and five one-year renewal options.

On June 16, 1992, ASCS entered into lease No. 57–645S–2–00003 with Kroh for office space located at 9200 Ward Parkway, Kansas City, Missouri. The lease provided for an annual rent of $1,815,100.00, at a rate of $151,258.33 per month. The parties executed Standard Lease Form 2 (Standard Lease) issued by the General Services Administration in February, 1965. Paragraph 4 of the

executed Standard Lease provided the following:

4. The Government may terminate this lease at any time by giving at least 120 * days' notice in writing to the Lessor and no rental shall accrue after the effective date of termination. Said notice shall be computed commencing with the day after the date of mailing.

*Subject to the termination clause of the contract.

Schedule A of the lease contains the referenced termination clause.[1] The clause provides:

TERMINATION

In the event funds for continued operations are not available, or the ASCS Deputy Administrator for Management determines that this office will move to another location outside the Kansas City metropolitan area, USDA may terminate this lease upon notice given 120 days prior to the anniversary date of the lease. ASCS shall reimburse the lessor for build-out costs based on the following: 1st anniversary: 80% of build-out costs; 2nd anniversary: 60% of build-out costs; 3rd anniversary: 40% of build-out costs; 4th anniversary: 20% of build-out costs. The termination clause shall not be exercised arbitrarily.

The defendant also had the right to terminate the lease under other circumstances notwithstanding the Schedule A termination clause, pursuant to (1) the secured financing clause, which is the failure to submit proof of secured financing upon government request prior to, or within, 60 days after the signing of the lease; (2) the radon testing clause, which gives the government the right to terminate with 30 days written notice in the event of radon testing failure; (3) the minimum space clause, which gives the government the right to terminate if the lessor fails to deliver the minimum square footage required by the specifications; (4) the ready for occupancy clause, which gives the government the right to terminate for the lessor's failure to deliver the premises for occupancy by the government within the time required

---

1. The parties agree that the footnote to the Standard Lease Form, paragraph 4 that states the 120 days notice for termination is " *Subject to

the termination clause of the contract," refers to the termination clause in Schedule A of the lease.

by the lease; (5) the misrepresentation clause, which allows the government to terminate for misrepresentation of safety certifications by the lessor; and, (6) the destruction clause, providing that in the event the premises are destroyed by fire or other casualty, the government could terminate the lease by giving fifteen days written notice.

The initial five year term of the lease began on March 1, 1993. On June 26, 1997, Olympia Properties, L.L.C. (Olympia) assumed ownership of the property from Kroh, becoming the lessor. On January 22, 1998, the government executed Modification No. 8, exercising its first annual option to renew the lease with Olympia for a one year period from March 1, 1998 through February 28, 1999. On January 12, 1999, the government issued Modification No. 12, the second annual option to renew and extended the lease from March 1, 1999 through February 28, 2000. Both modification documents stated that, "[a]ll other terms and conditions remain the same" under the lease.

In 1994, the Farm Service Agency (FSA) [2] assumed the responsibilities of the ASCS and became the lessee in the agreement with the plaintiff. The government decided to move the FSA to a new facility leased by the GSA within the Kansas City metropolitan area designed to accommodate the FSA and eight other USDA services. Because it was unknown whether the new facility would be ready to accommodate the FSA in time for the agency to relocate upon the expiration of the second renewal period of the lease with the plaintiff, the contracting officer, Angela Allen, took action to extend the lease with Olympia. In August, 1999, Ms. Allen presented the plaintiff with a proposed bilateral modification form for the purpose of extending the lease from March, 2000 through June, 2000. The plaintiff rejected this offer and responded that it would only accept a renewal option for the full year option period. On September 1, 1999, the government issued Modification No. 14, exercising its third renewal option from March 1, 2000 to February 28, 2001. Similar to the previous renewals,

Modification No. 14 also provided that "[a]ll other terms and conditions remain the same."

In February, 2000, the FSA was provided a definite date for when it could move into the new USDA facility. On February 28, 2000, the government issued unilateral Modification No. 15 to Olympia, stating that "[t]his change order terminates, in its' [sic] entirety, the above referenced lease agreement effective June 30, 2000." Modification No. 15 was given to Olympia 122 days in advance of the FSA's termination date of June 30, 2000. Absent the termination by FSA, the lease would have expired February 28, 2001. The defendant did not cite a lack of funding for the agency or a decision to relocate outside the Kansas City metropolitan area as the reason for termination. Instead, FSA moved to a new facility within Kansas City.

On August 28, 2000, Olympia submitted a certified claim to the contracting officer, Ms. Allen, disputing the termination of the lease and demanding payment in full for the entire third renewal term. The certified claim stated:

> The government has made no showing (nor attempted to make any showing) that the conditions precedent to termination contained in the above-quoted provisions have occurred, namely, that "funds for continued operations are not available, or the ASCS Deputy Administrator for Management determines that this office will move to another location outside the Kansas City metropolitan area." Accordingly, the Government had no right to terminate the Lease, and the Lease remains in full force and effect until the end of the term, that is until February 28, 2001.

The defendant has stipulated that the conditions described in the Schedule A termination clause, unavailability of funding and relocation outside the Kansas City metropolitan area, did not occur.

On October 31, 2000, contracting officer Allen denied Olympia's claim on the basis that "the termination language contained in

---

**2.** FSA was established when the USDA was reorganized in 1994. The FSA incorporated programs from several agencies, including the ASCS, the Federal Crop Insurance Corporation, and the Farmers Home Administration.

the SF–2, which provides the government the right to terminate the lease with 120 days notice, subject to the termination clause of the contract, applies only to the initial term of the contract," and not to the optional renewals of the lease.

Following the decision of the contracting officer, the plaintiff filed a complaint in this court. The plaintiff moved for partial summary judgment on liability, arguing that the termination was a violation of the Schedule A termination clause, which the plaintiff interpreted as requiring either a lack of funding or relocation outside of the Kansas City metropolitan area in order for FSA to be able to terminate prior to the existing contract conclusion date. The defendant filed a cross-motion for summary judgment, contending that the lease should be interpreted as allowing the government to terminate at any time with at least 120 days notice. The defendant further argues that the Schedule A termination clause does not apply to the optional renewals because it expired at the end of the base term of the lease.

## DISCUSSION

The parties have filed cross-motions for summary judgment pursuant to Rule 56 of the Rules of the United States Court of Federal Claims (RCFC). RCFC 56 is patterned on Rule 56 of the Federal Rules of Civil Procedure (Fed.R.Civ.P.) and is similar both in language and effect. Both rules provide that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." RCFC 56(c); Fed.R.Civ.P. 56(c); see also Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247–48, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); Adickes v. S.H. Kress & Co., 398 U.S. 144, 157, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970); Telemac Cellular Corp. v. Topp Telecom, Inc., 247 F.3d 1316, 1323 (Fed.Cir.), reh'g denied and reh'g en banc denied (2001); Monon Corp. v. Stoughton Trailers, Inc., 239 F.3d 1253, 1257 (Fed.Cir.2001); Avenal v. United States, 100 F.3d 933, 936 (Fed.Cir.

1996), reh'g denied (1997); Creppel v. United States, 41 F.3d 627, 630–31 (Fed.Cir.1994). A fact is material if it will make a difference in the result of a case under the governing law. Irrelevant or unnecessary factual disputes do not preclude the entry of summary judgment. Anderson v. Liberty Lobby, Inc., 477 U.S. at 247–48, 106 S.Ct. 2505; see also Monon Corp. v. Stoughton Trailers, Inc., 239 F.3d at 1257; Curtis v. United States, 144 Ct.Cl. 194, 199, 168 F.Supp. 213, 216 (1958), cert. denied, 361 U.S. 843, 80 S.Ct. 94, 4 L.Ed.2d 81 (1959), reh'g denied, 361 U.S. 941, 80 S.Ct. 375, 4 L.Ed.2d 361 (1960).

When reaching a summary judgment determination, the judge's function is not to weigh the evidence and determine the truth of the case presented, but to determine whether there is a genuine issue for trial. Anderson v. Liberty Lobby, Inc., 477 U.S. at 249, 106 S.Ct. 2505; see, e.g., Ford Motor Co. v. United States, 157 F.3d 849, 854 (Fed.Cir. 1998) (the nature of a summary judgment proceeding is such that the trial judge does not make findings of fact); Johnson v. United States, 49 Fed.Cl. 648, 651 (2001); Becho, Inc. v. United States, 47 Fed.Cl. 595, 599 (2000). The judge must determine whether the evidence presents a disagreement sufficient to require submission to fact finding, or whether the issues presented are so one-sided that one party must prevail as a matter of law. Anderson v. Liberty Lobby, Inc., 477 U.S. at 250–52, 106 S.Ct. 2505; Jay v. Sec'y of Dep't of Health and Human Servs., 998 F.2d 979, 982 (Fed.Cir.), reh'g denied and en banc suggestion declined (1993). When the record could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial, and the motion must be granted. See, e.g., Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); Hall v. Aqua Queen Mfg., Inc., 93 F.3d 1548, 1553 n. 3 (Fed.Cir.1996). In such a case, there is no need for the parties to undertake the time and expense of a trial, and the moving party should prevail without further proceedings. Summary judgment:

saves the expense and time of a full trial when it is unnecessary. When the material facts are adequately developed in the motion papers, a full trial is useless.

"Useless" in this context means that more evidence than is already available in connection with the motion for summary judgment could not reasonably be expected to change the result. *Dehne v. United States*, 23 Cl.Ct. 606, 614–15 (1991) (citing *Pure Gold, Inc. v. Syntex, Inc.*, 739 F.2d 624, 626 (Fed.Cir.1984)), *vacated on other grounds*, 970 F.2d 890 (Fed.Cir.1992); *United States Steel Corp. v. Vasco Metals Corp.*, 55 C.C.P.A. 1141, 394 F.2d 1009, 1011 (C.C.P.A.1968).

Summary judgment, however, will not be granted if "the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable [trier of fact] could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. at 248, 106 S.Ct. 2505; *Eli Lilly & Co. v. Barr Labs., Inc.*, 251 F.3d 955, 971 (Fed.Cir.2001), *cert. denied*, 534 U.S. 1109, 122 S.Ct. 913, 151 L.Ed.2d 879 (2002); *Gen. Elec. Co. v. Nintendo Co.*, 179 F.3d 1350, 1353 (Fed.Cir. 1999). In other words, if the nonmoving party produces sufficient evidence to raise a question as to the outcome of the case, then the motion for summary judgment should be denied. Any doubt over factual issues must be resolved in favor of the party opposing summary judgment, to whom the benefit of all presumptions and inferences runs. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. at 587–88, 106 S.Ct. 1348; *Monon Corp. v. Stoughton Trailers, Inc.*, 239 F.3d at 1257; *Wanlass v. Fedders Corp.*, 145 F.3d 1461, 1463 (Fed.Cir.), *reh'g denied and en banc suggestion declined* (1998).

The initial burden on the party moving for summary judgment to produce evidence showing the absence of a genuine issue of material fact may be discharged if the moving party can demonstrate that there is an absence of evidence to support the nonmoving party's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *see also Trilogy Communications, Inc. v. Times Fiber Communications, Inc.*, 109 F.3d 739, 741 (Fed.Cir.) (quoting *Conroy v. Reebok Int'l, Ltd.*, 14 F.3d 1570, 1575 (Fed.Cir.1994), *reh'g denied and en banc suggestion declined* (1995)), *reh'g denied and en banc suggestion declined* (1997);

*Lockwood v. Am. Airlines, Inc.*, 107 F.3d 1565, 1569 (Fed.Cir.1997). If the moving party makes such a showing, the burden shifts to the nonmoving party to demonstrate that a genuine dispute regarding a material fact exists by presenting evidence which establishes the existence of an element essential to its case upon which it bears the burden of proof. *See Celotex Corp. v. Catrett*, 477 U.S. at 322, 106 S.Ct. 2548; *Am. Airlines, Inc. v. United States*, 204 F.3d 1103, 1108 (Fed.Cir.2000); *see also Schoell v. Regal Marine Indus., Inc.*, 247 F.3d 1202, 1207 (Fed.Cir.2001).

Pursuant to RCFC 56, a motion for summary judgment may succeed whether or not accompanied by affidavits and/or other documentary evidence in addition to the pleadings already on file. *Celotex Corp. v. Catrett*, 477 U.S. at 324, 106 S.Ct. 2548. Generally, however, in order to prevail by demonstrating that a genuine issue for trial exists, the nonmoving party must go beyond the pleadings by use of evidence such as affidavits, depositions, answers to interrogatories and admissions. *Id.*

Even if both parties argue in favor of summary judgment and allege an absence of genuine issues of material fact, however, the court is not relieved of its responsibility to determine the appropriateness of summary disposition in a particular case. *Prineville Sawmill Co. v. United States*, 859 F.2d 905, 911 (Fed.Cir.1988) (citing *Mingus Constructors, Inc. v. United States*, 812 F.2d 1387, 1391 (Fed.Cir.1987)); *Chevron USA, Inc. v. Cayetano*, 224 F.3d 1030, 1037 n. 5 (9th Cir. 2000), *cert. denied*, 532 U.S. 942, 121 S.Ct. 1403, 149 L.Ed.2d 346 (2001). "[S]imply because both parties moved for summary judgment, it does not follow that summary judgment should be granted one or the other." *LewRon Television, Inc. v. D.H. Overmyer Leasing Co.*, 401 F.2d 689, 692 (4th Cir.1968), *cert. denied*, 393 U.S. 1083, 89 S.Ct. 866, 21 L.Ed.2d 776 (1969); *see also B.F. Goodrich Co. v. U.S. Filter Corp.*, 245 F.3d 587, 593 (6th Cir.2001); *Massey v. Del Labs., Inc.*, 118 F.3d 1568, 1573 (Fed.Cir.1997). Cross-motions are no more than a claim by each party that it alone is entitled to summary judgment. The making of such inherently con-

tradictory claims, however, does not establish that if one is rejected the other necessarily is justified. *B.F. Goodrich Co. v. U.S. Filter Corp.*, 245 F.3d at 593; *Atl. Richfield Co. v. Farm Credit Bank of Wichita*, 226 F.3d 1138, 1148 (10th Cir.2000); *Allstate Ins. Co. v. Occidental Int'l., Inc.*, 140 F.3d 1, 2 (1st Cir.1998); *Reading & Bates Corp. v. United States*, 40 Fed.Cl. 737, 748 (1998). The court must evaluate each party's motion on its own merit, taking care to draw all reasonable inferences against the party whose motion is under consideration. *DeMarini Sports, Inc. v. Worth, Inc.*, 239 F.3d 1314, 1322 (Fed.Cir. 2001); *Gart v. Logitech, Inc.*, 254 F.3d 1334, 1338–39 (Fed.Cir.2001), *cert. denied*, 534 U.S. 1114, 122 S.Ct. 921, 151 L.Ed.2d 886 (2002). After reviewing the parties' submissions, the court finds that there are no material facts in dispute. Furthermore, the parties have waived oral argument, and the court also finds the parties' briefing of their cross-motions for summary judgment to be adequate, with no need for oral argument.

Although a lease conveys a property interest, it is, nevertheless, a contract and should be interpreted in the same way as other contracts. *See Keydata Corp. v. United States*, 205 Ct.Cl. 467, 482, 504 F.2d 1115, 1123 (1974) ("[T]hough a lease may concern and convey a property interest, it is also very much a contract—and it is settled that the contracts of the Federal Government are normally governed, not by the particular law of the states where they are made or performed, but by a uniform federal law.") (citations omitted); *see also Forman v. United States*, 767 F.2d 875, 879 n. 4 (Fed.Cir.1985) ("[L]eases are normally considered within the realm of contracts . . . .") (citing *Keydata Corp. v. United States*, 504 F.2d at 1123); *Colon v. United States*, 35 Fed.Cl. 337, 340, 344 (1996) ("[T]he CDA [Contract Disputes Act] requirements apply to lease agreement disputes."); *Hamza v. United States*, 31 Fed. Cl. 315, 320 (1994) ("Because execution of a lease establishes a new interest, the lease falls within the purview of the statute [the CDA].").

The interpretation of a government contract is a matter of law. *See Grumman Data Sys. Corp. v. Dalton*, 88 F.3d 990, 997 (Fed.Cir.1996); *P.J. Maffei Bldg. Wrecking v. United States*, 732 F.2d 913, 916 (Fed.Cir. 1984); *Hol–Gar Mfg. Corp. v. United States*, 169 Ct.Cl. 384, 386–87, 351 F.2d 972, 973 (1965). As a matter of law, contract interpretation issues are amenable to decision on summary judgment. *See Olympus Corp. v. United States*, 98 F.3d 1314, 1316 (Fed.Cir. 1996); *Gov't Sys. Advisors, Inc. v. United States*, 847 F.2d 811, 813 n. 1 (Fed.Cir.1988); *Metric Constructors, Inc. v. United States*, 44 Fed.Cl. 513, 520 (1999), *aff'd*, 10 Fed. Appx. 853 (Fed.Cir.2001). General rules of contract interpretation apply to contracts to which the government is a party. *Lockheed Martin IR Imaging Sys., Inc. v. West*, 108 F.3d 319, 322 (Fed.Cir.1997). The primary objective in contract interpretation is to discern the parties' intent at the time the contract was executed. *King v. Dep't of the Navy*, 130 F.3d 1031, 1033 (Fed.Cir.1997); *Winstar v. United States*, 64 F.3d 1531, 1540 (Fed.Cir.1995) (citing *Arizona v. United States*, 216 Ct.Cl. 221, 234, 575 F.2d 855, 863 (1978)), *aff'd on other grounds*, 518 U.S. 839, 116 S.Ct. 2432, 135 L.Ed.2d 964 (1996). The language of the "contract must be given that meaning that would be derived from the contract by a reasonable intelligent person acquainted with the contemporaneous circumstances." *Hol–Gar Mfg. Corp. v. United States*, 169 Ct.Cl. at 388, 351 F.2d at 975. Moreover, words are to be given their plain and ordinary meaning. *Thanet Corp. v. United States*, 219 Ct.Cl. 75, 82, 591 F.2d 629, 633 (1979). In addition, a court must give reasonable meaning to all parts of the contract and not render portions of the contract meaningless. *See Lockheed Martin IR Imaging Sys., Inc. v. West*, 108 F.3d at 322 (citing *Gould, Inc. v. United States*, 935 F.2d 1271, 1274 (Fed.Cir.1991)); *McAbee Constr., Inc. v. United States*, 97 F.3d 1431, 1434 (Fed.Cir.), *reh'g denied and en banc suggestion declined* (1996); *Fortec Constructors v. United States*, 760 F.2d 1288, 1292 (Fed.Cir. 1985) (citing *United States v. Johnson Controls, Inc.*, 713 F.2d 1541, 1555 (Fed.Cir. 1983)); *GPA–I LP v. United States*, 46 Fed. Cl. 762, 769 (2000). To ascertain the intentions of the parties, the contract should be construed in its entirety, "so as to harmonize and give meaning to all its provisions."

*Thanet Corp. v. United States,* 219 Ct.Cl. at 82, 591 F.2d at 633 (citing *ITT Arctic Servs., Inc. v. United States,* 207 Ct.Cl. 743, 751–52, 524 F.2d 680, 684 (1975)); *Northwest Marine Iron Works v. United States,* 203 Ct.Cl. 629, 637, 493 F.2d 652, 657 (1974). The parties are presumed to have intended to create a valid, binding contract and the court should resolve alternative interpretations of contract language so as not to void the contract. *See Torncello v. United States,* 231 Ct.Cl. 20, 27, 681 F.2d 756, 761 (1982) (citing *Arizona v. United States,* 216 Ct.Cl. at 235–36, 575 F.2d at 863); *Truong Xuan Truc v. United States,* 212 Ct.Cl. 51, 64 n. 11, 1976 WL 905 (1976) (noting that a court should construe contract provisions, "if possible, to be lawful rather than unlawful," and citing *Hobbs v. McLean,* 117 U.S. 567, 576, 6 S.Ct. 870, 29 L.Ed. 940 (1886)).

When the terms of a contract are clear and unambiguous, there is no need to resort to extraneous circumstances for its interpretation. *See Sea–Land Serv., Inc. v. United States,* 213 Ct.Cl. 555, 567, 553 F.2d 651, 658 (1977), *cert. denied,* 434 U.S. 1012, 98 S.Ct. 724, 54 L.Ed.2d 755 (1978). Construction of an unambiguous writing, therefore, is an appropriate matter for summary judgment. *See Martin v. United States,* 20 Cl.Ct. 738, 745 (1990); *Kelley v. United States,* 19 Cl.Ct. 155, 161 (1989). A written agreement is ambiguous when a plain reading of the contract could result in more than one reasonable interpretation. *See Metric Constructors, Inc. v. NASA,* 169 F.3d 747, 751 (Fed. Cir.1999); *Tacoma Dept. of Pub. Utils. v. United States,* 31 F.3d 1130, 1134 (Fed.Cir. 1994) (citing *Hills Materials Co. v. Rice,* 982 F.2d 514, 516 (Fed.Cir.1992)). It is not enough that the parties differ in their interpretation of the contract clause. *See Cmty. Heating & Plumbing Co. v. Kelso,* 987 F.2d 1575, 1578 (Fed.Cir.1993). Nor may a court look to extrinsic evidence in determining whether a contract is ambiguous. *See McAbee Constr., Inc. v. United States,* 97 F.3d at 1435; *Tacoma Dep't of Pub. Utils. v. United States,* 31 F.3d at 1134 ("Outside evidence may not be brought in to create an ambiguity where the language is clear."). However,

because an ambiguous or uncertain writing sometimes can only be understood upon consideration of the surrounding circumstances, extrinsic evidence will be allowed to interpret an ambiguous clause. *See Sylvania Elec. Prods., Inc. v. United States,* 198 Ct.Cl. 106, 126, 458 F.2d 994, 1005 (1972).

■ Defendant argues that the Schedule A termination clause expired at the end of the base term and does not apply to the optional renewals. The defendant points to the second sentence of the Schedule A termination clause which describes how plaintiff would be reimbursed for build-out costs [3] in the event of early termination and states, "[b]ecause the reimbursement provision had no effect at the end of the five year term, the Schedule A termination clause expired, in its entirety, at the end of the five-year term." The defendant cites to *Mullan v. United States,* in support of its position that the Schedule A termination clause expired. *See Mullan v. United States,* 188 Ct.Cl. 568, 575, 412 F.2d 1305, 1310 (1969). In *Mullan,* the lease specified that the government could terminate the lease at anytime upon 90 days notice, but "only in the event that the New Social Security Administration Building … is completed and ready for occupancy coincident with the cancellation." *Id.* at 571, 412 F.2d at 1307. The government failed to exercise this right to terminate at a time when the building was completed and ready for occupancy. *Id.* at 571, 412 F.2d at 1308. The United States Court of Claims held that government's "right to cancel the lease in the event the new Social Security Administration building was completed 'coincident with the cancellation,' gave a limited right of cancellation, exercisable only at the time of the completion of this building" when the building was ready for occupancy. Therefore, according to the court, since the government did not exercise this option, "the entire clause became a nullity." *Id.* at 572, 412 F.2d at 1308. The court wrote: "Accordingly, since the condition could never again be met, the provision no longer had legal effect." *Id.* at 575, 412 F.2d at 1310.

---

3. The phrase "build-out costs" refers to the costs incurred by the lessor in the remodeling and construction of the tenant's proposed space, to make it ready for occupancy.

The decision in *Mullan v. United States*, however, is distinguishable from the facts in the present case. In *Mullan*, the event which gave the government the right to terminate occurred, yet the government chose not to exercise that option. *Id.* at 572, 412 F.2d at 1307. The clause, therefore, no longer served any purpose to either party because the government lost its one time opportunity to terminate after the new Social Security Administration building was competed. *Id.* at 572, 412 F.2d at 1308. In the present case, the events (unavailability of funding or relocation outside of the Kansas City metropolitan area) that specifically would give the defendant the option to terminate the lease under the Schedule A termination provision did not occur, however, there was still the possibility that these same events could occur during the life of the contract. Therefore, unlike the termination provision in *Mullan*, the Schedule A termination clause was still relevant because the events described could still occur.

Plaintiff argues that the Schedule A termination clause did not expire and was designed to protect plaintiff from the Standard Lease, paragraph 4 unlimited right of termination on 120 days notice, by forcing the government to honor the lease to the anniversary date of the contract modification. The plaintiff states:

> The Standard Form, as printed and without the parties' modification, basically gives the Government an *unrestricted* 120 day "walk" (in real estate parlance), that is, the *unrestricted* right to get out of the deal by merely giving a certain number of days' notice, here, 120 days. Such a clause would be highly favorable to the tenant, since it gives the tenant maximum flexibility. The tenant is not really committed beyond the number of days negotiated, i.e., 120 days. Four months' notice and it is gone. Similarly, such a broad and unfettered "walk" would be very disadvantageous to a landlord, because the landlord could lose a large tenant at any time, for no reason at all, on four months' notice.

(Emphasis in original.)

In this case, the modifications numbered 8 and 12 and 14 explicitly stated, "[a]ll other terms and conditions remain the same." As indicated in the earlier discussion of the *Mullan* case, however, it is possible for a term in the original contact to expire when the contract is renewed. *See Mullan v. United States*, 188 Ct.Cl. at 572, 412 F.2d at 1308 ("When GSA renewed the lease in 1961, the entire termination provision, including the 90–day termination clause, was of no legal effect, and GSA was bound for the full term called for by the renewal."). In fact, the lease before the court contains a provision providing for termination which did expire under its own terms. The Secured Financing clause provided that:

> USDA reserves the right to request proof of secured financing from the offeror prior to, or within 60 days after, signing this lease. Proof of secured financing shall be defined as written documentation showing that the offeror has the financial capability to perform this lease. The written documentation shall be provided by a recognized financial institution. If the offeror fails to submit such information upon request, or the documentation shows the offeror to be financially incapable of performing the lease, USDA may award the lease to another party or terminate the lease.

This provision giving the government the right to terminate for failure to submit proof of secured financing upon the government's request prior to, or within, 60 days after the signing of the lease, no longer had any effect 60 days after the start of the lease term. In contrast, although the build-out cost reimbursement provisions of the Schedule A termination clause no longer had meaning during the option years, there was an ongoing possibility that continuing funds would not be available or that management would move the office to another location outside Kansas City, such that the balance of the Schedule A termination clause had continuing meaning.

Furthermore, the three sentences of the Schedule A termination clause can be read independently. The first sentence offers the plaintiff protection by stating that in the event of insufficient funds or a move of the office outside Kansas City, the government must give the contractor termination notice

of at least 120 days prior to the anniversary date. The second sentence addresses available damages, also in the event of a termination for insufficient funds and a move outside of Kansas City, to allow the owner to recoup build-out costs on a declining basis over the course of the first five years of the contract. If the additional option years contemplated in the solicitation and contract beyond five years were exercised, the build-out cost recoupment provisions no longer could be triggered. The third sentence directs the government to refrain from exercising the termination provisions in the Schedule A termination clause arbitrarily. There is nothing in the Schedule A termination clause which sunsets the entire clause like the secured financing clause discussed above, which gave the government a right to terminate upon the occurrence of a specific event, then expired by its own terms. The payout provisions for the owner to recoup build-out costs over the first five years of the contract were overtaken by events (the expiration of the basic lease term of five years) and rendered moot. The other two sentences of the Schedule A termination clause remain viable and should not be read as a nullity.

Therefore, the Schedule A restriction, which requires the government to honor the lease to the anniversary date of the contract in specified situations, unavailability of appropriations or an office move outside Kansas City, provides a continuing benefit to plaintiff. The Schedule A termination clause is not a nullity, even though the sentence addressing build-out cost recoupment expired at the end of the original five year term of the lease. Despite the expiration of the need to reimburse the plaintiff for build-out costs, the Schedule A termination clause had a purpose and still offered the plaintiff additional damages in the event of early termination, if either of the two conditions, unavailability of appropriations or an office move outside Kansas City occurred. The defendant's interpretation that the Schedule A termination clause expired would render meaningless Modification No. 14's instruction to keep "[a]ll other terms and conditions ... the same." *See Lockheed Martin IR Imaging Sys., Inc. v. West,* 108 F.3d at 322 (Contract interpretation must give reasonable

meaning to the various contract provisions and "must assure that no contract provision is made inconsistent, superfluous, or redundant."); *see also Arizona v. United States,* 216 Ct.Cl. at 236, 575 F.2d at 863; *GPA–I LP v. United States,* 46 Fed.Cl. at 769. The court, therefore, finds that the Schedule A termination clause did not expire at the end of the base term of the lease and was still in effect during the optional renewal periods.

Regardless of whether the Schedule A termination clause had expired, the defendant argues that because neither of the events listed in the Schedule A termination clause occurred, the Schedule A termination clause had no effect and the government was free to terminate at any time upon 120 days notice, based on the Standard Lease, paragraph 4 termination provision. The defendant contends that because the Schedule A termination clause is independent of Standard Lease, paragraph 4, the defendant's termination of the lease under paragraph 4 was not dependent on the occurrence of either a lack of funding for the program or the relocation of the office space outside the Kansas City metropolitan area. The defendant states that, "[n]o plain, unambiguous language in this lease eliminates the Government's power to terminate the lease 'at any time,' upon at least 120 days notice." Under the defendant's interpretation, the Schedule A termination clause would only have an effect if the reason for the government's termination was either a lack of funding or relocation outside the Kansas City metropolitan area. In making this argument the defendant states:

> The Schedule A termination clause (1) introduces an additional 120–day notice requirement that supplements the 120–day notice requirement in Standard Form 2 ¶ 4, and (2) sets forth the conditions that will govern the application of this additional 120–day notice requirement.

(Emphasis in original.)

Plaintiff responds that the defendant's claim that it has the right to terminate the lease on 120 days notice, fails to give effect to the plain language of the lease and "strips

this clause [Schedule A termination] of any meaning." The plaintiff argues that:

> Stated simply, to interpret the Lease as allowing the Government to terminate the Lease upon 120 days' written notice for any reason—or for no reason at all—renders the termination provision *and* the language in each Modification of Contract providing that all other terms and conditions remain unchanged or remain the same meaningless. The Lease should not be interpreted in a manner that makes some of its provisions useless or inoperative.

(Emphasis in original.) According to the plaintiff, the government was allowed to terminate under the Standard Lease, paragraph 4, "*only if* funds were not available for the Lease *or* the office was moved to another location outside the Kansas City metropolitan area." (Emphasis in original.) Because neither "event" occurred, the plaintiff argues that the defendant's termination of the lease was wrongful. In making this argument plaintiff states:

> [T]he Government attempted to exercise an "unrestricted walk," relying on the printed form, GSA Standard Form 2 language but ignoring the fact that it had modified the printed form and had "subject[ed]" its operation "to" the "termination clause of the contract." To read the lease in favor of the Government is to deny any independent meaning not only to the words inserted into Standard Form 2 ("subject to the termination clause of the contract") but to the termination clause of the contract itself. The Government would never exercise the more limited, conditional right if it had an unrestricted, unconditional right to walk. Such a reading renders the qualified clause useless.

■ In *Arizona v. United States,* the United States Court of Claims offered guidance on how to analyze two allegedly inconsistent clauses in a contract, as follows:

> [P]rovisions of a contract must be so construed as to effectuate its spirit and purpose, that it must be considered as a whole and interpreted so as to harmonize and give meaning to all of its provisions, and that an interpretation which gives a rea-

sonable meaning to all parts will be preferred to one which leaves a portion of it useless, inexplicable, inoperative, void, insignificant, meaningless, superfluous, or achieves a weird and whimsical result.

*Arizona v. United States,* 216 Ct.Cl. at 236, 575 F.2d at 863; *see also Lockheed Martin IR Imaging Sys., Inc. v. West,* 108 F.3d at 322. As indicated in the *Arizona* and *Lockheed Martin* cases, and in other cases cited earlier, when a court is given a choice between two interpretations, one in which the provisions conflict with one another and one by which the two provisions can be reconciled, the rules of contract interpretation favor the interpretation which does not render the clauses inconsistent with each other.

■ Additionally, for example, in *Commercial Drapery Contractors, Inc.,* a Multiple Award Schedule contract between the plaintiff and the General Services Administration (GSA) was terminated by GSA. *Commercial Drapery Contractors, Inc. v. United States,* 133 F.3d 1, 3 (D.C.Cir.1998). The contract contained a Termination on Notice-type clause which stated: "Resultant contracts may be canceled in whole or part by either party upon 30 calendar days written notice." *Id.* at 5. The contract also contained a standard Termination for Convenience clause. The plaintiff in *Commercial Drapery* argued that the Termination on Notice-type clause was inconsistent with the standard Termination for Convenience clause. *Id.* at 6. The court, however, read the two termination clauses in *Commercial Drapery* as not in conflict, finding one termination clause permitting cancellation of the multiple award schedule contract, and the other termination clause permitting cancellation of individual orders. *Id.* at 6. Both termination clauses in *Commercial Drapery* were held to have meaning, and were not found to be inconsistent with each other. *Id.*

As noted above, the plaintiff argues that the Schedule A termination clause modifies the Standard Lease, paragraph 4 termination provisions, and that the defendant's interpretation of the contract provisions would render the Schedule A termination clause meaningless. The issue is whether the language of Standard Lease, paragraph 4

and the Schedule A termination clause can be reconciled in the same contract. In order to understand whether the two termination clauses at issue in the present case can be reconciled, the differences in the language of the two clauses need to be analyzed side by side. The Standard Lease, paragraph 4 clause gives the government the right to terminate "at any time by giving at least 120 * days' notice in writing to the Lessor and no rental shall accrue after the effective date of termination." The asterisk which appears in the original contract is defined immediately below the termination provision as "Subject to the termination clause of the contract." The Schedule A termination clause which follows in the contract allows the government to terminate "[i]n the event funds for continued operations are not available, or the ASCS Deputy Administrator for Management determines that this office will move to another location outside the Kansas City metropolitan area," upon "notice given 120 days prior to the anniversary date of the lease." Upon analysis, the words of the two clauses establish not only the differences in the amount of notice required to terminate, but also the circumstances covered and purpose and intent of each clause. By restricting termination to "120 days prior to the anniversary date" of the lease in the event of unavailability of funds or relocation outside Kansas City, the Schedule A termination clause would only allow the government to terminate once a year, or pay rental damages for any termination more than 120 days in advance of the anniversary date. Under the termination provisions of Standard Lease, paragraph 4, the government could terminate "at any time by giving at least 120* days' notice in writing" and not incur charges after the 120 days notice, regardless of whether that notice was given only 120 days before the anniversary date.

Moreover, the purpose and intent of the two termination clauses at issue in the present case are different. The first sentence of the Schedule A termination clause establishes two specific instances, the occurrence of which triggers reference to the clause, namely if funds for continued operation are unavailable or if the agency decides to move the office outside of Kansas City. In those instances the clause allows the government to terminate "120 days prior to the anniversary date of the lease." The second sentence of the Schedule A termination clause provides reimbursement of build-out costs incurred by the owner at rates dependent on whether the termination occurred 120 days prior to the first, second, third, or fourth anniversary of the original lease term. When these two sentences of the Schedule A termination clause are read together, it appears that one purpose of the Schedule A termination clause was to protect the plaintiff from the loss of build-out costs associated with an early termination of the lease, based on the unavailability of funds or relocation outside the Kansas City metropolitan area. In contrast, the Standard Lease, paragraph 4 did not allow the lessor to recoup build-out costs, and states that "no rental shall accrue after the effective date of termination."

The plaintiff's argument that under the defendant's interpretation, the Schedule A termination clause is made meaningless is not persuasive, as these clauses can be read together without rendering one of the clauses inoperative. The Standard Lease, paragraph 4 gives the government the right to terminate the lease "at any time by giving at least 120* days' notice ...." That provision was made " *Subject to the termination clause of the contract." The Schedule A termination clause begins by stating, "[i]n the event funds for continued operations are not available, or the ASCS Deputy Administrator for Management determines that this office will move to another location outside the Kansas City metropolitan area...." By beginning the clause with the phrase "[i]n the event," the court concludes that this clause was meant to modify the Standard Lease, paragraph 4, only upon the happening of either of the two events specified. Reading the provisions together, the Standard Lease gave the government the right to terminate on 120 days notice in all circumstances, except for the loss of continued funding or relocation of the office outside of the Kansas City metropolitan area.

Therefore, the plaintiff's interpretation, in which the loss of funding or relocation outside of the Kansas City metropolitan area are

the only circumstances in which the government could terminate the lease, would render inoperative the Standard Lease, paragraph 4 termination provisions. The government would have no right, under the plaintiff's interpretation, to terminate "at any time by giving at least 120 * days' notice," as it would only be allowed to terminate 120 days prior to the anniversary date of the lease, and only in the event of unavailability of funds or relocation outside of the Kansas City metropolitan area. Because plaintiff's interpretation would render Standard Lease, paragraph 4 meaningless, it is not persuasive and should not be given effect. *See Arizona v. United States,* 216 Ct.Cl. at 236, 575 F.2d at 863; *Lockheed Martin IR Imaging Sys., Inc. v. West,* 108 F.3d at 322. Because the two termination provisions have different purposes and can be read together without finding one of the clauses meaningless or inoperative, the court holds that the government's termination on 120 days notice was a proper exercise of its authority under the lease.

## CONCLUSION

For the foregoing reasons, plaintiff's motion for summary judgment is **DENIED** and defendant's cross-motion for summary judgment is **GRANTED**. The Clerk's Office shall enter **JUDGMENT** for the defendant consistent with this opinion. Each party shall bear its own costs.

**IT IS SO ORDERED.**