4737 **CONNER CO., L.L.C.,**
**Plaintiff–Appellant,**

v.

**UNITED STATES, Defendant–Appellee.**

No. 02–5131.

United States Court of Appeals,
Federal Circuit.

DECIDED: Feb. 21, 2003.

Before CLEVENGER, GAJARSA, and PROST, Circuit Judges.

CLEVENGER, Circuit Judge.

4737 Conner Co., L.L.C. ("Conner") seeks review of a decision of the Court of Federal Claims, which granted summary judgment in favor of the government in this contract dispute. *4737 Conner Co., L.L.C. v. United States*, No. 01–57C (Fed. Cl. Apr. 17, 2002). Conner entered into a lease agreement with the General Services Administration ("GSA") containing an option for renewal. The Court of Federal Claims determined on summary judgment that GSA did not exercise the option to renew the lease because its letter purporting to do so contained terms that differed from the terms of the option. We *affirm*.

I

GSA, Great Lakes Region, Chicago, Illinois, leased office space from Conner for use by the Social Security Administration. The lease, No. GS–05B–15092, was to run from July 1, 1990, through June 30, 2000.

Paragraph 4 of the original lease contained a termination clause that allowed GSA to "terminate this lease at any time on or after June 30, 1995 by giving at least 120 days' notice in writing to the Lessor and no rental shall accrue after the effective date of termination." Paragraph 5 gave GSA the option to renew the lease for additional terms. It provided for two five-year options beginning July 1, 2000, and allowed GSA to exercise the options by giving notice in writing at least 180 days before the end of the original term.

Subsequently, GSA and Conner negotiated an amendment to the lease, which provided for an increase in square footage. In the Supplemental Lease Agreement, entered into on December 10, 1993, Paragraphs 1, 3, and 4 of the original lease were deleted. New Paragraphs 1 and 3 increased the square footage covered by the lease and increased the rent accordingly. New Paragraph 4 simply set the effective date of the Supplemental Lease Agreement as May 1, 1994, and failed to provide a termination provision like that contained in the original Paragraph 4. Therefore, the provision that allowed GSA to terminate the lease upon 120 days' written notice was excised from the parties' contract.

On October 7, 1999, Ms. Cheryl Excellent, a GSA contracting officer, sent a letter to Conner in which she stated:

> Therefore, please be advised that the Government elects to exercise its option and hereby does exercise its option to renew and extend the lease for an additional 5 (five) years, such 5 (five) year term commencing on July 1, 2001. All other terms and conditions of the Lease remain the same, including, but not limited to, the Government's right to terminate the Lease at anytime after June 30, 1995, upon 120 days' prior written notice to the Landlord.

Conner responded to this letter on October 14, 1999, confirming receipt of GSA's notice to exercise its renewal option but advising GSA that the right to terminate had been deleted by the Supplemental Lease Agreement.

GSA then sent Conner a letter in response on October 25, 1999, in which it asserted that "the Government is not interested in extending the current lease for more than one (1) year, without the benefit of a cancellation clause." The letter went on to inform Conner that GSA was not

exercising its option to renew the lease and was rescinding its October 7, 1999, notice. Conner responded on November 12, 1999, stating that its position was that GSA no longer had a termination right under the Supplemental Lease Agreement, that it refused to accept GSA's attempt to rescind its exercise of the renewal option, and that the renewal term would commence on July 1, 2000.

Contracting officer Paul Schmitt issued a Final Decision on February 2, 2000, concluding that "the exercise of the option is rescinded and the current lease ends on June 30, 2000." Conner appealed this decision to the Court of Federal Claims. Upon cross-motions for summary judgment, the Court of Federal Claims concluded that GSA did not effectively exercise the option as a matter of law, and accordingly granted summary judgment in favor of the government.

Conner now appeals the decision to this court, and we have jurisdiction pursuant to 28 U.S.C. § 1295(a)(3).

## II

Summary judgment is appropriate only if there is no genuine issue as to any material fact. Fed. Cl. R. 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–49, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The parties here do not dispute any of the facts, but disagree over the legal effect of those facts. We review the Court of Federal Claims' grant of summary judgment *de novo*. *Gump v. United States*, 86 F.3d 1126, 1127 (Fed.Cir.1996).

The parties do not dispute the general rules dealing with the exercise of an option. "It is well settled that to properly exercise [an] option, the government's acceptance of that offer ha[s] to be unconditional and in exact accord with the terms of the contract being renewed." *New Eng. Tank Indus. of N.H., Inc. v. United States*, 861 F.2d 685, 687 (Fed.Cir.1988). *See also*

*Uniq Computer Corp. v. United States*, 20 Cl.Ct. 222, 231 (1990). Conner argues that GSA's October 7 letter evidenced a clear and unequivocal exercise of GSA's option to renew the lease. GSA, on the other hand, contends that its purported exercise of the option was not valid because it was not unconditional and contained terms that differed from those that represented the option after the amendment to the lease.

We faced a similar situation in *Alliant Techsystems, Inc. v. United States*, 178 F.3d 1260 (Fed.Cir.1999). In *Alliant*, the plaintiff contracted with the government to demilitarize a specified number of bombs, with the contract containing an option for an increase of up to 100 percent of the base number. *Id.* at 1263. The government attempted to exercise the option, but the contracting officer called for a rate of delivery that was higher than any reasonable interpretation of the contract would support. *Id.* at 1273–74. We held that the government's attempt to "exercise an option outside its terms" was not a valid exercise of the option and explained that the incorrect rate called for by the government "was not a scrivener's error or an inadvertent omission of an option term. It was an affirmative requirement that departed from the terms of the option." *Id.* at 1275.

As in *Alliant*, the government here attempted to exercise the option and thought it was properly doing so. However, the letter purporting to exercise the option referred to terms outside of those in the option. Here, GSA's October 7 letter expressly included a term that was not a term of the option—the right to terminate the lease upon 120 days' written notice. This explicit reference to a termination provision that was no longer contained in the option after the parties entered into the Supplemental Lease Agreement converted GSA's purported acceptance of the option into a counter-offer that Conner

was free to either accept or reject. Like the situation in *Alliant*, this inclusion of a term different from the terms of the option prevented the purported acceptance from being effective.

GSA admits that it made a mistake in believing that the termination provision was still a part of the option. Clearly, the Supplemental Lease Agreement was entered into for consideration and effectively deleted the no-fault termination clause, and the parties do not dispute this point. However, the fact that GSA was mistaken does not affect our analysis here. It may have been a different situation if GSA had simply been silent in its assumption that the termination provision was part of the option and then later tried to avoid the contract by claiming that it thought there was a termination provision. A party cannot generally enter into a contract and later avoid its obligations by pleading ignorance of the terms. *See Upton v. Tribilcock*, 91 U.S. 45, 50, 23 L.Ed. 203 (1875). However, GSA did not silently rely on its assumption, but instead expressed an intent in the October 7 letter to incorporate a termination provision into the contract. Again, this compares to what occurred in *Alliant*. In *Alliant*, the government had erroneously interpreted the terms of the option to provide for a higher delivery rate and included that erroneously high term in its attempt to exercise the option. Similarly, GSA here erroneously assumed that the lease still contained a termination provision and therefore included that termination provision in its letter purporting to exercise the option. Just as in *Alliant*, this error prevented the option from being effectively exercised because the purported acceptance was not in exact accordance with the terms of the option.

While GSA's October 7 letter clearly intended to exercise the option to renew the lease, the Court of Federal Claims was correct in concluding that this intent was conditioned upon the existence of a termination clause that GSA mistakenly assumed was included in the option terms. Reading the October 7 letter as a whole demonstrates that GSA was effectively conditioning its exercise of the option on the inclusion of a termination provision. This is further confirmed by GSA's October 25 letter to Conner, which reiterated that "the Government is not interested in extending the current lease for more than one (1) year, without the benefit of a cancellation clause." Therefore, the attempted exercise of the option was ineffective because it was not in strict compliance with the terms of the option. *See Lockheed Martin IR Imaging Sys., Inc. v. West*, 108 F.3d 319, 323–24 (Fed.Cir.1997).

## III

Because we conclude that GSA's October 7 letter was not an effective exercise of its option to renew the lease, we affirm the Court of Federal Claims' grant of summary judgment in the government's favor.