# ARMED SERVICES BOARD OF CONTRACT APPEALS

Appeal of -- )
)
Symetrics Industries, LLC ) ASBCA No. 58001
)
Under Contract No. FA8540-06-D-0002 )

APPEARANCE FOR THE APPELLANT: Edward J. Kinberg, Esq.
Widerman Malek, PL
Melbourne, FL

APPEARANCES FOR THE GOVERNMENT: Lt Col James H. Kennedy III, USAF
Air Force Chief Trial Attorney
Capt Eric J. Singley, USAF
Christine C. Piper, Esq.
Trial Attorneys

## OPINION BY ADMINISTRATIVE JUDGE HARTMAN
## ON CROSS-MOTIONS FOR SUMMARY JUDGMENT

The parties agree that, on twelve occasions during four different contract ordering periods, the government ordered quantities of five different components in excess of the contractually specified maximum number allowed to be ordered for the component during that contract period. In its summary judgment motion, the government argues that its orders in excess of contractually specified maximums were "counteroffers" that the contractor accepted to supply components at the lower price contractually specified for the component during the ordering period the maximum was exceeded and thus the contractor is not entitled to receive any additional compensation for supplying those components. In the alternative, the government argues that the contractor is estopped from receiving payment for the components ordered exceeding contract maximum quantities at the higher price for the component ordered set forth in the next period (option) for additional quantities of the component because the contractor did not notify the government that the order exceeded the period's contractually specified maximum prior to supplying the components. The contractor argues in its cross-motion (for partial summary judgment on liability) that it is entitled to receive the higher price for components ordered in excess of a period's specified maximum set forth in the following option period authorizing the ordering of additional quantities because the government's order of components exceeding a contract period maximum "constructively" exercised the following option for additional component quantities expressly setting forth a higher price for that component.

## STATEMENT OF FACTS FOR PURPOSES OF THE MOTIONS

On 2 November 2006, the Department of the Air Force (Air Force) awarded to Symetrics Industries, LLC (Symetrics) an Indefinite Delivery/Indefinite Quantity contract, No. FA8540-06-D-0002, to produce components of the "Countermeasure Dispenser System" with respect to its bid proposal "D" (Joint Stipulation of Facts (Stip.) 1; R4, tab 1 at 1, 237-438, tab 49 at 1139; app. mot., ex. 1). The contract provided that the Air Force could order components individually by contract line item number (CLIN) or as part of a "shipset" that combined different components depending upon the configuration of the aircraft upon which the shipset was to be installed. The price of a shipset was the sum of the price of its parts (individual component CLIN prices). (Stip. 3; R4, tab 1 at 2, 439, *see* tab 49 at 1139-40) The contract included over 200 pages of CLINs and each component CLIN contained a "Quantity Range Box" with two columns (stip. 4; R4, tab 49 at 1389-1607, *see* tab 1 at 237-438). The first of the two columns set forth unit quantities and contained different rows of quantity ranges for each CLIN. The second contained the different per-unit prices bid for each quantity range row. (Stips. 4a, 4b; R4, tab 1 at 237-438, tab 49 at 1389-1607) Preceding each CLIN's Quantity Range Box was a "Minimum Quantity" to be ordered under the CLIN and the "Maximum Quantity" that could be ordered under the CLIN (stip. 4c; *see* R4, tab 1 at 237-438, tab 49 at 1389-1607). For example, the first CLIN set forth in the parties' contract, CLIN 0163, stated:

Minimum
Quantity
1            EA

Maximum
Quantity
358          EA

....

| Range   | Unit Price  |
|---------|-------------|
| 1-10    | $8,065.00   |
| 11-20   | $7,935.00   |
| 21-50   | $7,360.00   |
| 51-100  | $6,555.00   |
| 101-150 | $6,050.00   |
| 151-200 | $5,894.00   |
| 201-300 | $5,578.00   |
| 301-358 | $5,463.00   |

(R4, tab 1 at 237)

2

The parties' contract contained an 18-month base period, three 1-year option periods and a fourth 6-month option period (R4, tab 1 at 237, *see also* tab 49 at 1139 ("RFP is issued to establish a five-year Indefinite Delivery/Indefinite Quantity (IDIQ) type contract.")). With respect to the base year ordering period, each component had a CLIN number beginning with the digit "0" (R4, tab 1 at 237-438). For example, CLIN 0163 above was for Control Display Units (CDUs) the Air Force ordered during the contract base period (*id.* at 237). The parties' contract allowed the Air Force to increase the maximum total quantity of an individual component it could order if it exercised one or more of the four options for a CLIN. For example, CLINs "1001" and "2001" were for ordering of the same component, "CDUs," available for ordering by the Air Force as CLIN 0163 in the base period, during that CLIN or component's first and second option periods, respectively. (*Compare* R4, tab 1 at 237 *with* R4, tab 1 at 303 and 339) In sum, the first digit or numeral of a component CLIN corresponded to the number of the ordering period (0 for base period, one to four for option periods) and there were options for each individual component CLIN, allowing the Air Force's option exercise to occur by individual component. (Stips. 6a, 6b; R4, tab 1 at 237-438)

Similar to the base period CLINs, each component option CLIN had its own "Maximum Quantity" and "Quantity Range Box" with columns setting forth quantity ranges and per-unit prices bid for each quantity range (R4, tab 1 at 303-438). For example, CLIN 1001 stated:

Minimum
Quantity
1         EA

Maximum
Quantity
160     EA

....

| Range | Unit Price |
|---------|-------------|
| 1-10 | $7,013.00 |
| 11-20 | $6,900.00 |
| 21-50 | $6,400.00 |
| 51-100 | $5,700.00 |
| 101-160 | $5,125.00 |

3

(R4, tab 1 at 303) Thus, the maximum and minimum quantities and unit prices by range for a component could vary depending upon the period in which the component was ordered by the Air Force.

Part 1, section B, of the parties' contract Schedule expressly stated:

> 2. The contract maximum and minimum are identified as follows: **The Government may order the maximum quantity under each line item.**

(R4, tab 1 at 2) (Emphasis added) Accordingly, the Air Force could order up to and including the maximum number set forth for a component under a CLIN but could not order a number of components in excess of the maximum number for that CLIN.

The parties' contract contained standard Federal Acquisition Regulation (FAR) clauses, including FAR 52.216-19, ORDER LIMITATIONS (OCT 1995); and FAR 52.217-7, OPTION FOR INCREASED QUANTITY – SEPARATELY PRICED LINE ITEM (MAR 1989). The former provided in part:

> (b) Maximum order. The Contractor is not obligated to honor—
>> (1) Any order for a single item in excess of **quantity of 1500**;
>> (2) Any order for a combination of items in excess of **quantity of 1500**; or
>> (3) A series of orders from the same ordering office within **30** days
>
> ....
>
> (d) Notwithstanding paragraphs (b) and (c) of this section, the Contractor shall honor any order exceeding the maximum order limitations in paragraph (b), unless that order (or orders) is returned to the ordering office within **10** days after issuance.

(R4, tab 1 at 466) (Emphasis in original) The latter provided:

> The Contracting Officer may exercise the option by written notice to the Contractor within **See Schedule** .

(R4, tab 1 at 467) (Emphasis in original)

4

The parties' contract schedule specified the contract base period ran from "date of award through 18 months," i.e., from 2 November 2006 through 4 May 2008 (R4, tab 1 at 237). It stated the first option for each component is "to be exercised within 18 months after award of the basic contract," and that the remaining options are "to be exercised within 12 months after award of [prior] Option" for that component (R4, tab 1 at 303, 339, 375, 411). Thus, the first option for each component could be exercised on any day during the base period and the subsequent options for each component could be exercised on any day which was within 12 months of exercise of the preceding option for that component.

There was no pattern or consistent manner in which the Air Force exercised its options to increase quantities of individual components/CLINs. Sometimes, it exercised options with respect to all four option periods for different CLINs on the same day. For example, on 12 July 2007, during the contract base period, it exercised options for individual components/CLINs with respect to the first, second, third and fourth option periods. (R4, tab 5) Another time, the Air Force exercised options for an individual component with respect to two different option periods (first and second) over the course of two consecutive days, CLIN 1024 on 24 April 2007 and CLIN 2024 on 25 April 2007 (R4, tabs 3, 4).

While the Air Force exercised options for individual components/CLINs, it also exercised options in mass (numerous CLINs) "to increase quantities of all unexercised CLINs." On 11 April 2008, it issued a contract modification increasing quantities of all unexercised CLINs during the first option period. On 8 April 2009, it issued a contract modification increasing quantities of all unexercised CLINs during the second option period. On 6 April 2010, it issued a contract modification increasing quantities of all unexercised CLINs during the third option period. On 5 April 2011, it issued a contract modification increasing quantities of all unexercised CLINs during the fourth option period. Thus, it is undisputed all options for all individual components/CLINs were exercised for each of the four option periods. (R4, tab 8 at 494, tab 10 at 499-500, tab 19 at 521, tab 23 at 533; stip. 9(B)(ii-iv))

Tracking of individual components ordered under the contract CLINs was not a simple process. While the base period had 118 CLINs, the four option periods each had 53 CLINs because a number of base period CLINs were for delivery of technical data (R4, tab 1 at 237-446). Each of the five ordering periods (base period and four options) included a CLIN allowing the Air Force to purchase a "shipset," i.e., to buy varying combinations of those components that could be ordered individually (see, e.g., R4, tab 1 at 296; stip. 3), necessitating that the parties identify various components in a shipset and determine the specific CLIN against which the part order must be applied (R4, tab 1 at 229). The delivery orders issued under the contract by the Air Force generally involved multiple CLINs and comprised numerous pages (R4, tabs 27 through 40). The

5

first delivery order (DO), for example, issued on 2 November 2006 involved 77 CLINs and consisted of 58 pages (R4, tab 27).

While over 30 DOs were issued, Symetrics seeks extra compensation in this appeal with respect to only 14 – DO 0001, 0002, 0011, 0013, 0016, 0018, 0020, 0021, 0023, 0025, 0026, 0027, 0029, and 0030 (stip. 7). The parties agree that their dispute pertains only to five components ordered: Controller Display Units (CDUs); Dispensers; Programmers-Air Force; Programmers-Navy; and Sequencers with Part No. 179250-0003 (stip. 2).

## CDUs

On 8 April 2009, the Air Force contracting officer (CO) issued Modification No. P00010 stating the purpose of the modification was "to Exercise Option II for all remaining CLINs," including the CLIN for CPUs, CLIN 2001 (stip. 9(A)(iii); R4, tab 10 at 499-500). The stated maximum for CLIN 2001 was 123 CDU units (R4, tab 1 at 339). The government, however, issued 5 DOs ordering a total of 125 CDU units referencing the CLIN and thereby exceeded the CLIN maximum by 2 units –

| 20 units | DO 20 | 30 Apr. 2009 | (R4, tab 33) |
| 39 units | DO 23 | 10 Sept. 2009 | (R4, tab 35) |
| 07 units | DO 25 | 30 Nov. 2009 | (R4, tab 36) |
| 30 units | DO 26 | 28 Dec. 2009 | (R4, tab 37) |
| 29 units | DO 27 | 24 Mar. 2010 | (R4, tab 38) |
| 125 units | | | |

On 6 April 2010, the Air Force CO issued Modification No. P00019 stating the purpose of the modification was "to Exercise Option III for all remaining CLINs," including the CLIN for CPUs, CLIN 3001 (stip. 9(B)(iv); R4, tab 19 at 521-22). While the stated maximum for CLIN 3001 was 132 units (R4, tab 1 at 375), the Air Force ordered only 17 CPUs referencing this CLIN, 115 units less than the stated maximum for that CLIN (R4, tabs 39-41).

## Dispensers

On 8 April 2009, the Air Force CO issued Modification No. P00010 stating the purpose of the modification was "to Exercise Option II for all remaining CLINs," including the CLIN for dispensers, CLIN 2012 (R4, tab 10 at 499-500). The stated maximum for CLIN 2012 was 1456 units (R4, tab 1 at 349). The government, however, issued 6 DOs ordering a total of 1644 dispensers and thereby exceeded the CLIN maximum by 188 units –

6

| | | | |
|---|---|---|---|
| 463 units | DO 20 | 30 Apr. 2009 | (R4, tab 33) |
| 199 units | DO 21 | 15 July 2009 | (R4, tab 34) |
| 374 units | DO 23 | 10 Sept. 2009 | (R4, tab 35) |
| 2 units | DO 25 | 30 Nov. 2009 | (R4, tab 36) |
| 458 units | DO 26 | 28 Dec. 2009 | (R4, tab 37) |
| 148 units | DO 27 | 24 Mar. 2010 | (R4, tab 38) |
| 1644 units | | | |

On 6 April 2010, the Air Force CO issued Modification No. P00019 stating the purpose of the modification was "to Exercise Option III for all remaining CLINs," including the CLIN for dispensers, CLIN 3012 (stip. 9B(iv); R4, tab 19 at 521-22). While the stated maximum for CLIN 3012 was 1356 units (R4, tab 1 at 385), the Air Force ordered only 565 dispensers referencing this CLIN, 791 less than the stated maximum –

| | | | |
|---|---|---|---|
| 86 units | DO 29 | 14 July 2010 | (R4, tab 39) |
| 238 units | DO 30 | 06 Aug. 2010 | (R4, tab 40) |
| 241 units | DO 31 | 08 Feb. 2011 | (R4, tab 41) |
| 565 units | | | |

### Programmers–Air Force

On 8 April 2009, the Air Force CO issued Modification No. P00010 stating the purpose of the modification was "to Exercise Option II for all remaining CLINs," including the CLIN for Programmers-Air Force, CLIN 2014 (R4, tab 10 at 499-500). The stated maximum for CLIN 2014 was 101 units (R4, tab 1 at 351). The Air Force, however, issued 5 DOs ordering a total of 130 Air Force Programmers referencing the CLIN and thereby exceeded the CLIN maximum by 29 units –

| | | | |
|---|---|---|---|
| 34 units | DO 20 | 30 Apr. 2009 | (R4, tab 33) |
| 11 units | DO 21 | 15 July 2009 | (R4, tab 34) |
| 38 units | DO 23 | 10 Sept. 2009 | (R4, tab 35) |
| 30 units | DO 26 | 28 Dec. 2009 | (R4, tab 37) |
| 17 units | DO 27 | 24 Mar. 2010 | (R4, tab 38) |
| 130 units | | | |

On 6 April 2010, the Air Force CO issued Modification No. P00019 stating the purpose of the modification was "to Exercise Option III for all remaining CLINs," including the CLIN for Programmers-Air Force, CLIN 3014 (stip. 9(C)(iv); R4, tab 19 at 521-22). While the stated maximum for CLIN 3014 was 97 units (R4, tab 1 at 387), the Air Force ordered only 29 Programmers-Air Force referencing the CLIN (R4, tabs 40, 41), 68 less than the stated maximum (*see* stip. 9(C)(iv)).

7

## Programmers-Navy

The base period for Programmers-Navy (CLIN 0177) had a stated maximum of 209 units (R4, tab 1 at 266). The Air Force, however, issued two DOs ordering a total of 241 Navy Programmers referencing the CLIN and thereby exceeded the CLIN maximum by 32 units –

| | | | |
|---|---|---|---|
| 116 units | DO 01 | 02 Nov. 2006 | (R4, tab 27) |
| 125 units | DO 11 | 06 Sept. 2007 | (R4, tab 29) |
| 241 units | | | |

On 20 December 2007, the Air Force CO issued Modification No. P00006 to exercise "Option 1 for CLIN 1015," Programmers-Navy (R4, tab 6 at 492). The stated maximum for CLIN 1015 was 174 units (R4, tab 1 at 316). The Air Force, however, issued three DOs ordering a total of 227 Navy Programmers referencing the CLIN, thereby exceeding the CLIN maximum by 53 units (R4, tabs 30, 31; stip. 9(D)(ii)).

| | | | |
|---|---|---|---|
| 138 units | DO 13 | 28 Dec. 2007 | (R4, tab 30) |
| 32 units | DO 16 | 11 July 2008 | (R4, tab 31) |
| 57 units | DO 18 | 31 Dec. 2008 | (R4, tab 32) |
| 227 units | | | |

On 18 December 2008, the Air Force CO issued contract Modification No. P00009 which stated that its purpose was to "Exercise Option II" for the CLIN Programmers-Navy (R4, tab 9 at 496-98). While the stated maximum for CLIN 2015 was 211 units (R4, tab 1 at 387), the Air Force ordered only 149 Navy Programmers that referenced this CLIN, 62 units less than the stated maximum (stip. 9(D)(iii)) –

| | | | |
|---|---|---|---|
| 110 units | DO 20 | 30 Apr. 2009 | (R4, tab 33) |
| 14 units | DO 21 | 15 July 2009 | (R4, tab 34) |
| 25 units | DO 23 | 10 Sept. 2009 | (R4, tab 35) |
| 149 units | | | |

On 17 December 2009, the Air Force CO issued contract Modification No. P00018 which stated that its purpose was to "Exercise Option III" for the CLIN Programmers-Navy (R4, tab 18 at 519-20). While the stated maximum for CLIN 3015 was 192 units (R4, tab 1 at 352), the Air Force issued two DOs ordering a total of 238 Navy Programmers referencing the CLIN (R4, tabs 38, 41), thereby exceeding the CLIN maximum by 46 units (stip. 9(D)(iv)) –

| | | | |
|---|---|---|---|
| 75 units | DO 27 | 03 Mar. 2010 | (R4, tab 38) |
| 163 units | DO 29 | 14 July 2010 | (R4, tab 39) |
| 238 units | | | |

On 5 April 2011, the Air Force CO issued contract Modification No. P00024 which stated its purpose was to "Exercise Option IV" for all remaining CLINs," including CLIN 4015 (R4, tab 23). The stated maximum for CLIN 4015 was 196 units (R4, tab 1 at 424), i.e., in excess of the remaining number of Navy programmer units that the Air Force CO had ordered during prior periods exceeding stated contract period maximums (69).

<u>Sequencers (<i>with</i> Part No. 179250-0003)</u>

On 8 April 2009, the Air Force CO issued Modification No. P00010 stating the purpose of the modification was "to Exercise Option II for all remaining CLINs," including the CLIN for Sequencers, CLIN 2022. The stated maximum for CLIN 2022 was 680 units (R4, tab 10 at 358-59). The Air Force, however, issued six DOs ordering a total of 1296 sequencers referencing the CLIN, and thereby exceeded the CLIN maximum by 616 units (stip. 9(E)(iii)) –

| | | | |
|---|---|---|---|
| 455 units | DO 20 | 30 Apr. 2009 | (R4, tab 33) |
| 101 units | DO 21 | 15 July 2009 | (R4, tab 34) |
| 323 units | DO 23 | 19 Sept. 2009 | (R4, tab 35) |
| 10 units | DO 25 | 11 Nov. 2009 | (R4, tab 36) |
| 224 units | DO 26 | 28 Dec. 2009 | (R4, tab 37) |
| 183 units | DO 27 | 03 Mar. 2009 | (R4, tab 38) |
| 1296 units | | | |

On 6 April 2010, the Air Force CO issued Modification No. P00019 stating the purpose of the modification was "to Exercise Option III for all remaining CLINs," including the CLIN for sequencers (part no. 179250-0003), CLIN 3022 (stip. 9(E)(iv); R4, tab 19 at 521-22). While the stated maximum for CLIN 3022 was 703 units (R4, tab 1 at 394-95), the Air Force ordered only 519 sequencers (R4, tabs 39, 40) that referenced this CLIN (<i>see</i> stip. 9(E)(iv)), 184 units less than the stated maximum.

On 8 February 2011, the Air Force CO issued contract Modification No. P00024 which stated its purpose was to exercise "Option IV for CLIN 4022" (R4, tab 22). The record here reflects that, while the stated maximum for CLIN 4022 was 619 units (R4, tab 1 at 431), the Air Force ordered only 116 sequencers referencing this CLIN (R4, tab 41), 503 units less than the stated maximum.

<u>Claim</u>

On 12 January 2011 (R4, tab 42), Symetrics notified the Air Force CO that:

> [T]he quantity of Sequencers ordered under delivery order
> 0034, in addition to other predecessor delivery orders noted

9

below, exceed maximum quantities of the option clauses in the contract....

The problem began when the quantities authorized for purchase under option 2 were exceeded and continued into option 3 and have now spread into option 4.

The CO responded that she would "not be taking any action with respect to Delivery Orders issue[d] prior to...DO 0034" and, if Symetrics wishes, it can submit "a claim pertaining to the quantities and delivery orders referenced" (R4, tab 43).

On 14 October 2011, Symetrics submitted to the Air Force CO a certified claim seeking $722,654.00 (R4, tab 45). Symetrics stated:

In certain [DOs], defined below, contracted maximum allowable Units ordered per Option and/or Range were exceeded and the next applicable Option and/or Range pricing was not applied causing a deficit to either the government or Symetrics with a net deficit to Symetrics in the amount of $722,654.00.

In a final decision dated 12 December 2011, the Air Force CO denied the claim. She stated that: "FAR 52.216-19(d) requires a contractor object to an order that exceeds the 'maximum' on a specified CLIN within the timeframe specified" in the clause; Symetrics did not object to the DOs within that timeframe; the Air Force DOs did not exceed "the maximum ordering quantity of 1500, as specified in FAR 52.216-19(b)"; Symetrics "has been paid in full" for the DOs; and it has not provided any evidence "it suffered financial harm in the performance of the referenced [DOs]." (R4, tab 46)

## DECISION

Board Rule 7(c) authorizes us to entertain and rule upon motions for summary judgment. *E.g., J.W. Creech, Inc.,* ASBCA Nos. 45317, 45454, 94-1 BCA ¶ 26,459 at 131,661 (referring to former Board Rule 5(b)). The standards set forth for FED. R. CIV. P. 56 guide our resolution of such motions. *Lear Siegler, Inc.,* ASBCA No. 30224, 86-3 BCA ¶ 19,155 at 96,794; *Allied Repair Service, Inc.,* ASBCA No. 26619, 82-1 BCA ¶ 15,785 at 78,162-63. Where both parties move for summary judgment, as here, we evaluate each motion upon its own merits. *McKay v. United States,* 199 F.3d 1376, 1380 (Fed. Cir. 1999); *Mingus Constructors, Inc. v. United States,* 812 F.2d 1387, 1391 (Fed. Cir. 1987). We will grant a motion for summary judgment only when the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and the moving party is entitled to entry of judgment as a matter of law. The burden of demonstrating these elements is upon the party who seeks summary judgment and the nonmoving party is

entitled to have all reasonable inferences drawn in its favor. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-24 (1986); *Elekta Instrument S.A. v. O.U.R. Scientific Int'l, Inc.*, 214 F.3d 1302, 1306 (Fed. Cir. 2000); *Comptech Corp.*, ASBCA No. 55526, 08-2 BCA ¶ 33,982 at 168,082.

In this appeal, the parties have submitted a stipulation of facts agreeing that, on 12 occasions during four different contract ordering periods, the Air Force ordered quantities of different components in excess of the contractually-specified maximum number allowed to be ordered for the component during that contract period. It is also undisputed by the parties that, as a result of the Air Force CO's actions, Symetrics (1) supplied all quantities ordered by the Air Force in excess of a contract period's stated maximum and (2) subsequently sought payment from the Air Force for the quantities ordered in excess of the period maximum at the rate which was specified under the subsequent ordering period option for supply of those quantities. (*See* stips. 7, 9, 10) Thus, there is no issue of material fact regarding the issuance of DOs for quantities of components in excess of order period maximums. Rather, the issue presented is how the CO's actions in ordering quantities of components exceeding the contract period maximums (and Symetric's response) are to be treated under the terms of the parties' contract.

The CO denied Symetrics' claim on the basis that FAR 52.216-19(d) required it to object to an order exceeding a CLIN "maximum" within the timeframe set forth in that clause, i.e., ten days. However, the ten-day timeframe for returning an order to the Air Force specified in that clause pertains to three types of orders described in FAR 52.216-19(b): "(1) [a]ny order for a single item in excess of **quantity of 1500**; (2) [a]ny order for a combination of items in excess of **quantity of 1500**; or (3) [a] series of orders from the same ordering office **within 30 days**" (emphasis added). Symetrics does not contend in this appeal that any order at issue contravened a "maximum" set forth in FAR 52.216-19(b). Rather, it only contends, on 12 occasions during different contract order periods, the Air Force ordered quantities of 5 different components in excess of the **contractually-specified maximum** number allowed to be ordered for the **component/CLIN during that contract period**. (App. mot. at 6-7, 28-29; *see* gov't mot., ex. 1 at 7) The CO, therefore, erred in invoking FAR 52.216-19(d) as a bar to Symetrics' claim.

It is undisputed here that Air Force COs ordered quantities of components which exceeded the contractually-specified maximum number allowed to be ordered for a component/CLIN during particular contract periods. As support for this action, the Air Force argues the COs' DOs exceeding the contractually-specified maximums for component/CLINs were "counteroffers" by a CO to purchase extra components at a price less than that set forth in the next contract option for the additional quantities and Symetrics accepted the COs' "counteroffers" by supplying additional components ordered. In advancing this argument, however, the Air Force does not identify any "offers" by Symetrics that a CO could possibly have "countered." *See, e.g., First*

11

*Commerce Corp. v. United States*, 335 F.3d 1373, 1381 (Fed. Cir. 2003) (a reply to an offer conditioned on terms different from those offered is a counteroffer).

In addition, the Air Force does not identify any source of legal authority for a CO to have made "counteroffers" to Symetrics for provision of component quantities exceeding those authorized by the parties' contract (gov't opp'n to app. mot. at 6-7). The CO did not possess any "unilateral" legal right to amend the parties' contract to require Symetrics to produce components in excess of maximum quantities specified for a contract ordering period. *See, e.g., Lear Siegler*, 86-3 BCA ¶ 19,155 at 96,795 (power conferred on option holder is simply "power of acceptance"), *aff'd*, 867 F.2d 600 (Fed. Cir. 1989); *Lockheed Martin IR Imaging Sys., Inc. v. West*, 108 F.3d 319, 323 (Fed. Cir. 1997) (option exercise must be unconditional and in accord with terms of contract being renewed); FAR 52.243-1 (under the Changes clause, a CO may make changes within general scope of contract only to the drawings, designs, specifications, method of shipment or packing, and place of delivery).

Absent proof to the contrary, we must presume that the CO acted properly here, *e.g., Sun Oil Co. v. United States*, 572 F.2d 786, 805 (Ct. Cl. 1978), and complied with the statutory and regulatory requirements that govern full and open competition, *e.g.,* FAR 6.303-1. The record before us in this appeal does not show the Air Force CO was conducting new, separate procurements for extra components in excess of existing contract maximums. Rather, it indicates simply that the CO was not closely monitoring the number of components ordered during various contract periods and, on 12 occasions, apparently by mistake, ordered quantities in excess of contract period maximums prior to the issuance of a formal contract amendment stating that the CO had exercised the next option for additional quantities of the component. We therefore reject the Air Force's contention that the DOs at issue were "counteroffers" for additional quantities exceeding contract period maximums.

Symetrics argues that the DOs issued by the CO specifying quantities of components in excess of contract period maximums "exercised" Air Force options to procure extra quantities under the following contract options for those components. According to Symetrics, unless the Air Force exercised the options as soon as the allowable unit maximums were exceeded, the Air Force was asking Symetrics to deliver components it had no authority to request – i.e., component quantities in excess of contract allowable unit maximums. (App. mot. at 22-23, 26, 28-29; app. resp. at 3-4, 6)

The Air Force argues that "Symetrics' legal position is that the government's ordering practice must have 'by operation of law' automatically 'triggered' and self-exercised the government's options to increase quantities at the various moments 'when each contracted maximum allowable unit threshold was exceeded.'" The Air Force states this "theory of self-exercising options is legally untenable" because a contract "option cannot be exercised by operation of law." According to the Air Force, the parties' contract conferred upon it the unilateral discretion to exercise, or not

exercise, its FAR 52.217 options at the times of its choosing in accordance with the terms of the option clause. (Gov't mot. at 5, 13, 15)

The Air Force is correct that it was not under any obligation to exercise the options for additional component quantities and that Symetrics could not require it to do so. *Government Sys. Advisors, Inc. v. United States*, 847 F.2d 811, 812-13 (Fed. Cir. 1988) (government was free not to exercise option); *Dynamics Corp. v. United States*, 389 F.2d 424, 431 (Ct. Cl. 1968) (option is obligation by which one is bound to sell, but it is discretionary with other party whether to buy). The Air Force, however, appears to miscomprehend the argument advanced by Symetrics with respect to the DOs for quantities exceeding contract period maximums. Symetrics is not arguing here that options for additional component quantities must be deemed exercised "as a matter of law." Rather it is contending, among other things, that the DOs, themselves, constituted exercise of the options for additional quantities by the Air Force.

In its summary judgment motion, the Air Force expressly recognizes that the terms of the option clause in the parties' contract specified only that option "exercise be in writing and be prior to specified deadlines," and the "clause did not incorporate, either expressly or by reference, any other terms, conditions, or obligations" (gov't mot. at 5, 14). The 12 DOs that ordered component quantities in excess of contract period stated maximums were all "in writing" and executed by Air Force COs. In addition, each DO was issued prior to the specified deadline for option exercise, i.e., within 18 months after award of the basic contract "for additional quantities under the first options and within 12 months after award of [prior] component Options" for the three remaining components' options (*compare* R4, tab 1 at 303, 339, 375, 411 *with* R4, tabs 3, 4-10, 14-15, 18-9, 21-23). The DOs at issue therefore appear to comport with "expressly stated" requirements for the exercise of options for additional quantities.

While recognizing that the option clause did not incorporate expressly any other terms regarding exercise of options for additional quantities, the Air Force additionally contends that "the written notice" supplied a contractor for exercise of an option must "clearly communicate an intent to exercise the option." It argues that none of the DOs at issue contained any reference to an "option," let alone 'clearly communicated an intent to exercise the option.'" It states that its CO's practice was to exercise options by issuance of a bilateral contract "modification." (Gov't mot. at 14, 22) Symetrics counters it reasonably construed the DOs as option exercises because, absent option exercise, the CO lacked legal authorization to order (via a DO or any other means) additional quantities of components since component quantities ordered as of that date exceeded contractually specified component period quantity maximums (app. mot. at 20-22, 24).

We have held that "[t]here is no requirement that the option be exercised by a modification" in similar situations. Where an option clause does not require exercise of an option through issuance of a modification, a written communication provided to the contractor can suffice as an option exercise. *United Food Services, Inc.*, ASBCA

13

No. 43711, 93-1 BCA ¶ 25,462 at 126,819; *Contel Page Services, Inc.*, ASBCA No. 32100, 87-1 BCA ¶ 19,540 at 98,735. Thus, the issue presented here by the parties' differing contentions is whether the content of the DOs shows the CO was exercising options for additional quantities.

Due to the unusual facts of this appeal, we need not resolve this issue to rule on the parties' cross-motions for summary judgment. There is no dispute here regarding whether any of the options were exercised. The parties' agree that each of the contract options was exercised properly by the Air Force. They simply disagree as to the date of exercise of those options. (Stip. 9; gov't mot. at 8-9; app. mot. at 23) The date of option exercise, however, is not determinative here of how the disputed DOs are to be treated under the parties' contract. Because all of the contract options were exercised, the Air Force CO possessed legal authority to order the additional quantities of each component subsequent to the COs' issuance of a DO exceeding the contract period stated maximum. The COs' actions after issuing those DOs – both in accepting and paying for the components ordered in excess of contractually stated period maximums – constituted "ratification" by the Air Force CO of the earlier DOs that the CO lacked authority to issue due to the DOs exceeding contractually stated period maximums. *Real Estate Technical Advisors, Inc.*, ASBCA Nos. 53427, 53501, 03-1 BCA ¶ 32,074 at 158,508 (official possessing contracting authority who has actual or constructive knowledge of facts with respect to unauthorized contract action may ratify action so as to bind government); *Reliable Disposal Co.*, ASBCA No. 40100, 91-2 BCA ¶ 23,895 at 119,717-18 (same); *see, e.g., Silverman v. United States*, 679 F.2d 865 (Ct. Cl. 1982); *HFS, Inc.*, ASBCA No. 43748 *et al.*, 92-3 BCA ¶ 25,198 at 125,561.

Since the options for additional quantities were exercised, and the Air Force CO accepted the quantities ordered in excess of the prior period maximums after issuing the unauthorized DOs, thereby ratifying the earlier DOs, the CO is obligated legally to pay the contractor for the additional quantities of components at the prices specified in the component exercised options for the ordering of the additional quantities, not at the prices set forth for components ordered during the periods in which a stated maximum quantity was reached. *Skyway Air Parts Co.*, ASBCA No. 10298, 66-1 BCA ¶ 5573 at 26,055 (ratification carries with it the same consequences and corresponding benefits as does an authorization *ab initio*); *see C. Sanchez & Son, Inc. v. United States*, 6 F.3d 1539, 1543 (Fed. Cir. 1993) (we interpret a contract in accord with its express terms and plain language). It is undisputed that this did not occur; rather the Air Force CO paid Symetrics for the additional quantities at the prices set forth for components ordered during the periods that stated maximum quantities were reached (*see* stips. 7-10; gov't mot. at 21; app. mot. at 23). The Air Force, therefore, is liable to Symetrics for the difference.

The Air Force contends further that Symetrics should be "equitably estopped" from recovering this difference because Symetrics did not notify the Air Force prior to delivering the components at issue that the Air Force had exceeded the contractually

14

stated maximum for the components during the relevant period (gov't reply br. at 7-8). In order to invoke equitable estoppel, however, a party must demonstrate four elements, including lack of knowledge on its own part of the true facts. *See Emeco Industries, Inc. v. United States*, 485 F.2d 652, 657-59 (Ct. Cl. 1973); *Louisiana Lamps & Shades*, ASBCA No. 45294, 95-1 BCA ¶ 27,577 at 137,435. The Air Force cannot make such a demonstration in this appeal because it clearly possessed knowledge of the number of components that it had ordered from Symetrics.

## CONCLUSION

The government's motion for summary judgment is denied. Appellant's cross-motion for partial summary judgment with respect to liability is granted.

Dated: 27 May 2015

TERRENCE S. HARTMAN
Administrative Judge
Armed Services Board
of Contract Appeals

I concur

MARK N. STEMPLER
Administrative Judge
Acting Chairman
Armed Services Board
of Contract Appeals

I concur

RICHARD SHACKLEFORD
Administrative Judge
Vice Chairman
Armed Services Board
of Contract Appeals

I certify that the foregoing is a true copy of the Opinion and Decision of the Armed Services Board of Contract Appeals in ASBCA No. 58001, Appeal of Symetrics Industries, LLC, rendered in conformance with the Board's Charter.

Dated:

JEFFREY D. GARDIN
Recorder, Armed Services
Board of Contract Appeals

15